HENLINE, INC., HARLEY M. "SONNY" HENLINE II,
HARLEY M. HENLINE, DONALD D. HENLINE,
RUTH HENLINE *v.* JOE W. MARTIN.

[No. 2-275A38. Filed May 26, 1976. Rehearing denied June 23, 1976.]

*Leonard E. Eilbacher, Hunt, Suedhoff, Borror, Eilbacher & Lee,* of Fort Wayne, for appellants.

*Donald G. Yates,* of Huntington, for appellee.

SULLIVAN, J.—Defendants Harley M. Henline (Harley), Ruth Henline (Ruth), Donald D. Henline (Donald), Harley M. Henline II ("Sonny"), and Henline, Inc., appeal from the trial court's refusal to set aside its entries placing them in default for failure to timely appear and respond to plaintiff Joe W. Martin's action for personal injuries. Finding no reversible error, we are obliged to affirm.

Plaintiff-appellee Joe W. Martin filed his complaint against the four individual Henlines and Henline, Inc. on July 26, 1974. Martin claimed $250,000 for personal injuries allegedly suffered when he was struck by a utility pole which Sonny Henline had been attempting to lower into a hole on Martin's land by means of Henline, Inc.'s wrecker. The gravamen of the complaint was that Sonny had been negligent, and that he and the rest of the Henline family, as well as the corporate entity, were responsible to Martin for the injuries allegedly caused thereby.

Defendant Harley Henline is the president and sole shareholder of Henline, Inc. His wife Ruth and two sons Donald and Sonny are the corporation's only other employees: Ruth serves as secretary-treasurer, and the sons operate the wrecker service in which the corporation is engaged. Ruth testified at the hearing on defendants' motion to set aside the

defaults that the family incorporated its wrecker service in 1969 for the purpose of obtaining PSCI permits in the corporate name.

Martin's complaint was filed and service issued upon all five defendants on Friday, July 26, 1974. All of the defendants except Sonny were personally served the next day. Sonny's summons and copy of the complaint were delivered to him on Sunday, July 28. After receiving these documents, Harley called his insurance agent, who told him to bring all of the documents to the agent's office on Monday. This Harley did, and all copies of the five defendants' summonses and complaints were left with the agent. Harley testified that the agent had assured him that "[h]e would take care of them and I didn't need to worry about it." Approximately ten days later, Harley called the agent to check upon the progress of the defense and was informed that the papers had been forwarded to the company's claims adjuster. Defendants' next contact with the case occurred in August, 1974, when they were informed of their default by counsel retained on their behalf by the insurance company.

Defendants' insurance agent had forwarded all relevant documents to the company's claims adjuster, Mr. Charles Love. Love had first learned of the suit in a routine telephone call to defendants' agent in Huntington, Indiana on July 31. Mr. Love testified that defendants' agent was one of eleven local agents within Love's territory as the company's adjuster, and that Love worked out of an office in his home in Akron, Indiana. In his conversation with defendants' agent, Love told the agent to mail to Love's home in Akron the summonses and complaints. The agent did so, and Love received the documents on August 2, 1974.

When Love received the papers he took no immediate action but placed them in his "Bodily Injury Folder" in his home office. Then, by Love's own account: "I put it [the folder] on a stack of dictation that I had on the desk [in his den-office] and proceeded to take off on the road to go to Peru to run my

regular territory on this Friday [August 2]." Love testified that he was kept extremely busy on his "run" through his "regular territory", being occupied with numerous claims filed in the wake of a tornado which had passed through the area earlier in the year, and did not return to his home in Akron until approximately 2:45 P.M. on Tuesday, August 20. Soon after arriving home, Love testified that "[I] [w]ent in and sat down at the desk to dictate. I started through this pile of dictation and this file jumped out at me and I looked at the summons and noted that the return date had expired."

Immediately after his discovery, Love called the attorneys now representing defendants, and, pursuant to their instructions, took the file and drove to the lawyers' offices in Fort Wayne, arriving there around 6:00 P.M. on August 20. Hurried telephone calls revealed that Love's discovery was too late. Pursuant to plaintiff's motions, the trial court had defaulted Harley, Ruth, Donald and Henline, Inc., on Monday, August 19. The twenty days after service upon them of the complaint within which Ind. Rules of Procedure, Trial Rule 6 (C) required them to respond had expired the preceeding Friday. See TR. 6 (A). Sonny was defaulted on the very day of Love's discovery of the summonses, inasmuch as Sonny was served a day later than his co-defendants.

The response of defendants' counsel to these events was commendable. The attorneys immediately secured affidavits from all five defendants (Henline, Inc., by its president Harley), and from Love attesting to the facts recited above. The affidavits and the attorneys' appearance were promptly filed on August 21, 1974, along with a motion to set aside the defaults "pursuant to Indiana Rule of Trial Procedure 60 (B) for the reason that said defaults were taken by mistake, surprise, and excusable neglect as is shown by the . . . attached . . . affidavits. . . ." After an evidentiary hearing held August 30, the trial court denied this motion and defendants appeal.

Before reaching the merits of this case, recent decisions of this court prompt us to comment upon the appropriate pro-

cedures involved. Here, as in our recent decision in *Glennar Mercury-Lincoln, Inc.* v. *Riley* (1976), 167 Ind. App. 144, 338 N.E.2d 670, and the Third District's decision in *Green* v. *Karol* (1976), 168 Ind. App. 467, 344 N.E.2d 106, no judgment was entered upon the default. In all three cases, the precise issue is the propriety of granting relief from a mere *entry* of default. In *Glennar* we treated the question according to the explicit guidelines of TR. 60 (B). In *Green* the third District stated that: "TR. 55 does not impose explicit standards to be applied by the trial court when it is setting aside a mere entry of default. Only when a *default judgment* has been entered does TR. 55 (C) call into play the TR. 60 (B) standards. . . ."[1] 168 Ind. App. at 475, 344 N.E.2d at 111. Discussion of this seeming conflict is appropriate inasmuch as the problem is intimately related to the appealability of the trial court's decision herein, and hence our jurisdiction of this appeal.

Prior to January 1, 1971, Ind. TR. 55 (C) was identical to its federal counterpart, Fed. R. Civ. P. 55 (C). Both rules differentiated between relief from an entry of default and relief from a default judgment by providing that (1) "[f]or good cause shown the court may set aside an entry of default", and (2) a "judgment by default . . . may be set aside . . . in accordance with . . . Rule 60 (B)." But in 1971, the Indiana rule was amended by deletion of the first clause, so that present TR. 55 (C) contains no mention of the circumstances under which relief from a mere entry of default may be granted.

Two interpretations of the 1971 amendment to TR. 55 (C) are possible: either (1) attack upon the entry of default itself is no longer possible, but the defaulted party must wait for judgment to be entered upon the default and then file a TR. 60 (B) motion directed at

---

1. "(C) Setting aside default. A judgment by default which has been entered may be set aside by the court for the grounds and in accordance with the provisions of Rule 60 (B)."

the default judgment, or (2) a default entry and a default judgment are to be treated alike for purposes of seeking relief therefrom. We think the latter interpretation is correct.

The arguable view that the 1971 amendment to TR. 55(C) renders an entry of default no longer subject to immediate attack is incompatible with the scheme of TR. 60(B) and (C). Were such a reading to be adopted, it would follow that the entry of default is in the nature of an interlocutory order from which no appeal could lie. This seems to be the federal view of a default entry. *See* 10 Wright & Miller, *Federal Practice and Procedure* § 2692, p. 297; § 2693, pp. 306-307, n. 65 (1973). But the federal version of Trial Rule 60(B), unlike the Indiana rule, contains no provision allowing relief thereunder ". . . from a final judgment, order, *default.* . . ." TR. 60(B) (emphasis supplied). *See Glennar Mercury-Lincoln, Inc.* v. *Riley, supra,* 338 N.E.2d at 673, n. 2. Further, federal rule 60 contains no provision comparable to TR. 60(C), which provides, *inter alia,* that "[a] ruling . . . of the court denying or granting relief, in whole or in part, . . . under subdivision (B) of this rule shall be deemed a final judgment, and an appeal may be taken therefrom. . . ." When post-1971 TR. 55(C) and present TR. 60 (B) and (C) are read together and in juxtaposition with Fed. R. Civ. P. 55 (c) and 60 (b), it is clear that a defaulted party may properly attack the court's mere entry of default by means of a TR. 60(B) motion; that the propriety of granting such a motion is to be judged in accordance with the explicit standards of TR. 60(B); and that the trial court's disposition of the motion is appealable.

Defendants present the following allegations of error as grounds for reversal:

1. The trial court abused its discretion in failing to set aside the default of each of the five defendants on grounds of "mistake, surprise, or excusable neglect" per TR. 60(B)(1).
2. The trial court erred in defaulting Henline, Inc., because Henline, Inc. was not mentioned in the complaint.

3. The trial court erred in refusing to set aside the default as to Henline, Inc., because the entry was void since Henline, Inc. was not mentioned in the complaint.
4. The trial court erred in permitting plaintiff to amend the complaint by inserting the name of Henline, Inc. after Henline, Inc. had been defaulted.
5. The court below erred in defaulting Harley, Ruth and Donald Henline because the complaint failed to state a claim against them upon which relief could have been granted.
6. The court below erred in refusing to set aside its default of Harley, Ruth and Donald Henline because the complaint failed to state a claim against them.

## NO ABUSE OF DISCRETION IN REFUSING TO SET ASIDE DEFAULTS AGAINST EACH OF FIVE DEFENDANTS ON GROUNDS OF MISTAKE, SURPRISE, EXCUSABLE NEGLECT

Defendants acknowledge that "[w]e may reverse the denial of relief under TR. 60(B)(1) only when an abuse of discretion is shown." *Glennar Mercury-Lincoln, Inc.* v. *Riley, supra,* 338 N.E.2d at 677. We have stated at some length the undisputed facts which defendants assert demonstrate "mistake, surprise, or excusable neglect" within the meaning of TR. 60(B)(1). Defendants contend that *Continental Assurance Co.* v. *Sickels* (1969), 145 Ind. App. 671, 252 N.E.2d 439, requires us to hold the trial court's refusal to grant relief under TR. 60(B)(1) to be an abuse of discretion. We disagree.

In *Continental Assurance Co.* v. *Sickels, supra,* this court reversed the trial court's sustaining of plaintiffs' demurrer to defendants' complaint to set aside a default judgment on grounds of "mistake, inadvertence, surprise, or excusable neglect. . . ."[2] Defendant's failure to timely appear, and the

2. The quoted language is from Burns Ind. Ann. Stat. § 2-1068 (1967 Repl.), under which the action in *Continental Assurance Co.* had been brought. Under that statute, unlike under present TR. 60(B), the defaulted party was required to bring an independent action to set aside the default judgment on the grounds now covered by TR. 60(B)(1).

resulting default, occurred because a clerk or secretary employed by the defendant insurance company had misfiled the duly served summons and complaint so that defendant's counsel was not aware of plaintiff's action until after the default had been entered. Reversal in *Continental Assurance Co.* v. *Sickels, supra,* did not mean that the trial court, after hearing evidence, would be required as a matter of law, to find "excusable neglect". Reversal merely meant that the trial court erred in finding that, as a matter of law, *no* "excusable neglect" could be shown upon the basis of the allegations made there. *See Continental Assurance Co.* v. *Sickels, supra,* 145 Ind. App. at 676-678, 252 N.E.2d at 443 (Sharp, J., concurring). Hence *Continental Assurance Co.* does not require us to hold the trial court's refusal, based upon affidavits and an evidentiary hearing, to grant relief under TR. 60(B)(1) to be grounds for reversal.

> In *Continental Assurance Co.* v. *Sickels, supra,* 145 Ind. App. at 675, 252 N.E.2d at 441, this court quoted 2 Wiltrout Ind. Civ. Proc. § 1230, p. 243:

" '. . . No fixed rule can be stated as to what facts and circumstances will constitute excusable neglect, mistake, or inadvertence for not appearing and defending against the default judgment. What constitutes excusable neglect, mistake, or inadvertence within the meaning of the statute must be determined from the facts in each particular case . . . each case must necessarily depend upon its own facts and circumstances. . . .' "

It is the necessarily *ad hoc* nature of resolution of TR. 60 (B) (1) cases that places the decision primarily in the hands of the trial court.

In *Green* v. *Karol, supra,* 344 N.E.2d 110, with respect to the trial court's decision whether or not to enter a default judgment, it was noted:

"The trial court's discretion is considerable. On the one hand, a default judgment plays an important role in the maintenance of an orderly, efficient judicial system as a weapon for enforcing compliance with the rules of procedure and for facilitating the speedy determination of litigation,

On the other hand, there is a marked judicial preference for deciding disputes on their merits and for giving parties their day in court, especially in cases involving material issues of fact, substantial amounts of money, or weighty policy determinations. See C. WRIGHT & A. MILLER, 10 FEDERAL PRACTICE AND PROCEDURE § 2681 (1973). The trial court, in its discretion, must balance these factors in light of the circumstances of each case. (footnotes omitted)."

A similar discretion exists with respect to setting aside a default, subject, however, to the basic premise that:

". . . a default judgment is not generally favored, and my doubt of its propriety must be resolved in favor of the defaulted party." *Green* v. *Karol, supra,* 344 N.E.2d at 111.

While Love's failure to act promptly when he received the relevant legal documents on August 2 can certainly be characterized as "neglect", there was undisputed evidence that Mr. Love was acting under considerable stress and business pressure during that period such as might permit a given trial court to "excuse" his neglect. The fact that Mr. Love, the adjuster, did take immediate action when he noticed the papers on August 20 is another factor which could have permitted the granting of relief. However, the fact that another trial court might not have abused its discretion by granting defendants relief on these facts, does not necessarily mean that the court below abused its discretion by denying relief.

The evidence was such that the trial court could properly refuse to set aside the default, based upon the consideration that "a default . . . plays an important role in the maintenance of an orderly, efficient judicial system. . . ." *Green* v. *Karol, supra.* Considering the role of defendants' insurance company as the entity in charge of defendants' defense, it would not be unreasonable for the trial court to analogize the status of the company's claims adjuster with that of an attorney acting on defendants' behalf so as to apply the "general rule . . . that the negligence of the attorney is the negligence of the client. . . ." *Moe* v. *Koe*

(1975), 165 Ind. App. 98, 330 N.E.2d 761, 765. Further, it would not be unreasonable for the trial court to give great weight to the type of considerations noted by the concurring opinion in *Continentinal Assurance Co.* v. *Sickels, supra,* 145 Ind. App. at 680, 252 N.E.2d at 444:

> "[T]his case should not be construed to always relieve an insurance corporation of the acts of its authorized employees and agents in mislaying or mishandling suit papers. *Insurance corporations are in the business of handling claims and must necessarily handle suit papers and other legal process in the ordinary course of their business.* They certainly should not be encouraged by the result in this case to lower their standards of care and caution in the handling of such papers. (Emphasis supplied).

We cannot say that, as a matter of law, the trial court was required to excuse defendants from the result of the neglect of the claims adjuster of their insurance carrier. *Cf. Himelstein Bros., Inc.* v. *Texas Co.* (1955), 125 Ind. App. 448, 125 N.E. 2d 820.

## NO ERROR IN DEFAULT OF HENLINE, INC. AMENDMENT OF COMPLAINT, OR FAILURE TO VACATE DEFAULT AGAINST HENLINE, INC.

Defendants argue that the complaint's failure to name Henline, Inc. in its text renders the default entered against the corporation void because "the complaint patently fails to state a claim upon which relief can be granted" as to Henline, Inc. Related to this issue is the argument that the trial court abused its discretion in permitting plaintiff to amend the complaint by adding Henline, Inc.'s name to the text thereof *after* the default entry, and in allowing such amendment to "relate back" to plaintiff's filing of the complaint.

Close examination of TR. 15 resolves these related issues against defendants. While the caption of the complaint named Henline, Inc., as a co-defendant, and summons was properly issued and served upon the corporate entity, the complaint as originally filed did not explicitly name Henline, Inc., in its

text. When defendants argued before the trial court that the default against Henline, Inc. should be set aside for this reason, plaintiff successfully moved for the insertion, by interlineation, of Henline, Inc.'s name in the first paragraph of the complaint. The first paragraph now reads as follows:

> "[Plaintiff avers:]
> 1. That Henline, Inc. HARLEY M. "SONNY" HENLINE, II, HARLEY M. HENLINE, DONALD D. HENLINE, and RUTH HENLINE, are and during all the times herein involved have been engaged in the business of providing wrecker service to the general public."

Plaintiff's position is that the amendment was properly granted and, inasmuch as Henline, Inc. had proper notice of the suit and could not be said to be prejudiced thereby, such amendment related back to the date of filing of the complaint so that Henline, Inc. was properly subject to default. We agree.

Plaintiff's oral motion to amend his complaint by adding the name "Henline, Inc." to its body made and granted under TR. 15(A), which states, in part, that:

> "Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be given when justice so requires."

It has been held that "[t]he grant or denial of leave to amend under the . . . quoted portion of TR. 15(A), *supra,* is a matter within the sound discretion of the trial court and reviewable only for an abuse thereof. * * *" *Selvia* v. *Reitmeyer* (1973), 156 Ind. App. 203, 295 N.E.2d 869, 872. Consistent with this general approach is the position that, inasmuch as the "leave of court" amendments allowed by TR. 15(A) contain no time proscription, the matter of timeliness is also within the trial court's discretion. *See Hirshborn* v. *Mine Safety Appliance Co.* (D.C. Pa. 1951), 101 F.Supp. 549, *aff'd.* (3d Cir.), 193 F.2d 489; 4 A.L.R. Fed. 123, 131. Civil Code Study Commission Comments to TR. 15(A), in 2 Harvey, Indiana Practice: *Rules of Procedure Anno.* 121 (1970). Professor Harvey notes that a "prime

consideration" in determining whether to grant leave to amend under TR. 15(A) is "[w]hether the amendment will result in prejudice to a party. . . ." 2 Harvey, *supra,* at 130. Considering the relationships of the various individual defendants and the corporate entity which they wholly comprised, we see no demonstrable prejudice to Henline, Inc.

The question of prejudice to Henline, Inc. is material to the propriety of the "relation back" effect given plaintiff's amendment by the trial court. TR 15(C) states, in relevant part, that:

"(C) Relation back of amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing· the action against him, the party to be brought in by amendment

(1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and

(2) knew or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against him."

Here, Henline, Inc. was issued process, and that process was served upon its president, Harley M. Henline. The complaint's caption named the corporate entity as co-defendant with the individual Henlines. The paragraphs of the complaint following the amended first paragraph referred to "defendants" generally as the principals under whose direction co-defendant Sonny Henline allegedly negligently injured plaintiff. Under the particular facts of this case, the conditions of TR. 15(C) (1) and (2) were clearly met. Thus the rule that "amendments correcting a misnomer or misdescription relate back . . ." is applicable. *Ryser* v. *Gatchel* (1972), 151 Ind. App. 62, 69, 278 N.E.2d 320, 324.

## SUPPOSED FAILURE OF COMPLAINT TO STATE A CLAIM AGAINST HARLEY, DONALD, RUTH, HENLINE, INC. NOT GROUNDS FOR REVERSAL

Defendants point out that even if the amendment properly relates back, the complaint contains only one explicit reference to Harley, Donald, Ruth Henline, and Heline, Inc. in its text (in the first paragraph as noted above), and that this fact shows that the complaint fails to state a claim as to these four co-defendants. Defendants' reasoning here is the same as employed with respect to their position that the absence of the name "Henline, Inc." from the body of the complaint required the default entered against the corporation to be set aside:

> "Appellants . . . urge a rule which requires a default entry . . . to be set aside where it rests upon a complaint 'so deficient in substance as conclusively to negate the existence of a cause of action at the time of its rendition.' *Apple* v. *Edwards*, 123 Mont. 135, 211 P.2d 138; . . ."

Even assuming the validity of the rule which defendants propose, such a rule clearly has no application as to Henline, Inc., Harley, Ruth and Donald. While true that the only co-defendant alleged to have been physically involved in the accident was Sonny, the theory of the complaint is obviously that the other four codefendants are somehow liable for the injuries to plaintiff allegedly caused by Sonny's negligence. The failure of the complaint to specifically allege the theory upon which Henline, Inc., Harley, Ruth and Donald could be liable for Sonny's negligence is not fatal at the pleadings stage. *See State* v. *Rankin* (1973), 260 Ind. 228, 230-231, 294 N.E.2d 604, 606; *Citizens Nat. Bank of Grant County* v. *First Nat. Bank of Marion* (1975), 165 Ind. App. 116, 331 N.E.2d 471, 481-482. The complaint here obviously is not so deficient in substance as conclusively to negate the existence of a claim against the defendants other than Sonny.

Further, to the extent that defendants attempt to argue that a complaint's vulnerability to a TR. 12(B)(6) motion is grounds for setting aside a default entered against the defendants named therein, such argument must be rejected. The "failure of the complaint to state a claim sufficient to withstand a motion to dismiss" may defeat a recovery upon that complaint but such is not a valid reason for setting aside the default. *See M. Lowenstein & Sons* v. *American Underwear Mfg. Co.* (E.D. Pa. 1951), 11 F.R.D. 172, 173.

Affirmed.

BUCHANAN, P.J., and WHITE, J., concur.

NOTE.—Reported at 348 N.E.2d 416.