830 P.2d 1348

Raymond E. PADILLA,
Plaintiff–Appellee,

v.

ESTATE OF Tomas S. GRIEGO, deceased, and Martha S. Griego, d/b/a Mountain View Bar, Defendants–Appellants.

No. 11668.

Court of Appeals of New Mexico.

Feb. 17, 1992.

Kathrin Kinzer–Ellington, W. Anthony Sawtell, Daniel Cron, Catron, Catron & Sawtell, P.A., Santa Fe, N.M., for plaintiff-appellee.

Harold Worland, Albuquerque, N.M., for defendants-appellants.

## OPINION

HARTZ, Judge.

Defendants, the Estate of Tomas S. Griego, deceased, and Martha S. Griego, d/b/a Mountain View Bar, appeal from district court orders granting summary judgment to Plaintiff, Raymond E. Padilla, and denying Defendants' motion for relief from the summary judgment. The judgment awarded Padilla $250,000 in compensatory damages against Defendants, jointly and severally, and also awarded Padilla $50,000 in punitive damages against Martha Griego. We affirm.

On August 29, 1986, Padilla filed a complaint against Defendants, alleging that he

was assaulted by Tomas Griego on October 4, 1983, at the Mountain View Bar, which was owned by Martha Griego. The complaint alleged that she was liable for compensatory damages under the doctrine of respondeat superior and was liable for punitive damages for permitting Tomas Griego to operate the bar when she knew or should have known of his violent and cruel disposition and the danger he posed to patrons.

The district court granted Padilla's Motion for Summary Judgment on June 15, 1989. The Motion for Summary Judgment relied on an affidavit by Padilla, matters admitted in the answers to the Complaint filed on behalf of Defendants, and matters deemed admitted by Defendants' failure to respond to requests for admissions served upon them by Padilla. Defendants did not respond to the Motion for Summary Judgment, did not appear at the pretrial conference at which the district court considered the Motion, and did not appear at the hearing at which Padilla's counsel presented the Order Granting Summary Judgment to the district court for signature. On June 23, 1989, barely a week after the filing of the summary judgment, Defendants moved for relief from the judgment under SCRA 1986, 1–059 and 1–060(B). The motion and accompanying affidavits asserted that Defendants were unaware of their attorneys' failure to respond to various pleadings filed in the case and claimed that they had a meritorious defense in that Tomas Griego was physically incapable of committing the alleged assault and that he was not an agent, servant, or employee of the bar. The district court denied the motion.

## I. APPEAL FROM SUMMARY JUDGMENT

### A. *Jurisdiction*

Defendants' sole contention in their appeal from the summary judgment is that the district court lacked jurisdiction over the subject matter of the Complaint. Defendants rely on NMSA 1978, Section 37–2–4 (Repl.Pamp.1990), which reads:

> No action pending in any court shall abate by the death of either, or both, the parties thereto, except an action for libel, slander, malicious prosecution, assault or assault and battery, for a nuisance or against a justice of the peace [magistrate] for misconduct in office, which shall abate by the death of the defendant.

Tomas Griego had died by the time Padilla filed his Complaint. Defendants argue that therefore the district court had no jurisdiction to consider the civil action for assault against the Estate, nor did it have jurisdiction against Martha Griego because, in their view, the Complaint against her was premised solely on respondeat superior liability for the actions of Tomas Griego. Defendants' argument is raised for the first time on appeal. No pleading in district court refers to Section 37–2–4.

Defendants' jurisdictional argument was resolved by our supreme court in a decision handed down shortly after the briefs were filed in this case. *Sundance Mechanical & Utility Corp. v. Atlas,* 109 N.M. 683, 789 P.2d 1250 (1990) holds that "the failure of a complaint to state a cause of action does not interfere with or detract from the court's subject-matter jurisdiction[.]" *Id.* at 689, 789 P.2d at 1256. The court reasoned that it would not be possible to determine whether a petitioner successfully stated a cause of action unless the court had jurisdiction to examine the claim. In other words, "[i]f the facts pleaded must constitute a cause of action before the court has jurisdiction, then who is to determine that fact?" *Id.* (quoting *Abraham v. Homer,* 102 Okl. 12, 226 P. 45, 49 (1924)).

### B. *Right to Appeal*

On occasion, however, the term "jurisdictional error" is used loosely to refer simply to an error that can be raised for the first time on appeal. Particularly because the opinion in *Sundance* was not available to Defendants before they filed their briefs in this case, they may have used the word "jurisdiction" in this sense. We therefore

consider the possibility that their contention under Section 37–2–4, although not a true "jurisdictional" claim, is nevertheless properly before this court on appeal.

■ Our Rules of Civil Procedure strongly imply that a contention that a complaint fails to state a claim upon which relief can be granted must be made prior to appeal. SCRA 1986, 1–012(H) states as follows:

**Waiver or preservation of certain defenses.**

(1) A defense of lack of jurisdiction over the person, improper venue, insufficiency of process or insufficiency of service of process is waived:

(a) if omitted from a motion in the circumstances described in Paragraph G of this rule; or

(b) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 1–015 to be made as a matter of course.

(2) A defense of failure to state a claim upon which relief can be granted, a defense of failure to join a party indispensable under Rule 1–019 and an objection of failure to state a legal defense to a claim may be made in any pleading permitted or ordered under Rule 1–007, or by motion for judgment on the pleadings, or at the trial on the merits.

(3) Whenever it appears by suggestions of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.

The rule describes three categories of defenses. The first category—including lack of jurisdiction over the person, etc.—must be raised promptly, usually in the answer. The third category—lack of jurisdiction of the subject matter—can be raised at any time. The second category—which includes failure to state a claim upon which relief can be granted—can be made "at the trial on the merits."

The structure of the rule indicates that the defense of failure to state a claim can-

not ordinarily be raised after the trial on the merits. This appears to be the interpretation that the federal courts have uniformly given to Federal Rule of Civil Procedure 12(h), which is in all material respects identical to our Rule 1–012(H). As stated in 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1392, at 763 (1990):

> According to the plain language of Rule 12(h)(2), the three enumerated defenses [including failure to state a claim upon which relief can be granted] are waived if they are not presented before the close of trial. Thus, for example, they may not be asserted for the first time on appeal. Nor can these defenses be asserted through any type of post-trial motion. [Footnote omitted.]

*Accord Brule v. Southworth,* 611 F.2d 406, 409 (1st Cir.1979); *Weaver v. Bowers,* 657 F.2d 1356, 1360 (3d Cir.1981), *cert. denied,* 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982); *Madore v. Ingram Tank Ships, Inc.,* 732 F.2d 475, 479–80 (5th Cir.1984); *Black, Sivalls & Bryson v. Shondell,* 174 F.2d 587, 590–91 (8th Cir.1949); *Simpson v. Providence Wash. Ins. Group,* 608 F.2d 1171, 1174 (9th Cir.1979); *Snead v. Department of Social Servs.,* 409 F.Supp. 995, 1000 (S.D.N.Y.1975) (three-judge court); *Gonzales v. Union Carbide Corp.,* 580 F.Supp. 249, 252–53 (N.D.Ind.1983). (The rule does not, however, deprive an appellate court of power to hear an issue raised for the first time on appeal if such review is permitted under other appellate rules or doctrines. *See* SCRA 1986, 12–216(B)(1) (failure to preserve issue does not preclude appellate court from considering, in its discretion, question of general public interest); *Weaver v. Bowers.*)

If we were to rely on this authority, we would refuse to consider Defendant's contentions predicated on Section 37–2–4. *Sundance,* however, states that in New Mexico the rule is otherwise. 109 N.M. at 690, 789 P.2d at 1257. Several appellate opinions, ultimately deriving from *Baca v. Perea,* 25 N.M. 442, 184 P. 482 (1919),

which predated our rules of civil procedure, indicate that the defense of failure to state a claim may be raised for the first time on appeal. We therefore proceed to the merits.

### C. *Merits*

■ By its terms, Section 37–2–4 does not apply to the Complaint filed in this case. The Complaint was filed after the death of Tomas Griego. Section 37–2–4 applies only when death occurs while an action is pending; it describes which pending actions abate when one of the parties dies. The statute governing which actions can initially be brought is NMSA 1978, Section 37–2–1 (Repl.Pamp.1990). Sections 37–2–1 and 37–2–4 were originally enacted by the territorial legislature in 1884. For convenience, we shall refer to all predecessors of Sections 37–2–1 and 37–2–4 by these section numbers, although the section numbers actually varied with the codification. In 1884 Section 37–2–1 read:

> In addition to the causes of action which survive at common law, causes of action for mesne profits, or for an injury to real or personal estate, or for any deceit or fraud, shall also survive, and the action may be brought, notwithstanding the death of the person entitled or liable to the same.

1884 N.M.Laws, ch. 5, § 1. One would expect the two sections of the 1884 law to be consistent. That is, one would expect that if a pending action abated under Section 37–2–4 when a party died, then Section 37–2–1 would not have permitted initiation of a suit on the same cause of action after the death of that party. In particular, one can assume that the 1884 legislature thought that at common law a suit for libel, slander, malicious prosecution, or assault (which abated under Section 37–2–4 if a party died) could not be brought in the first place if either the tortfeasor or the victim had died. Apparently, this was the common law rule. *See* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 125A (5th ed. 1984). Thus, under the original version of Section 37–2–1, Padilla's cause of action, at least the claim against the Estate, would not have been permitted.

In 1941, however, the state legislature amended Section 37–2–1 to add: "The cause of action for wrongful death and the cause of action for personal injuries, shall survive the death of the party responsible therefor." 1941 N.M.Laws, ch. 79, § 1. The law has not been further amended. In common parlance, a claim of assault would be considered a "cause of action for personal injury." Consequently, the Complaint in this case stated a proper cause of action against the Estate unless the term "personal injury" has a special meaning in Section 37–2–1.

Perhaps the 1941 legislature intended to limit the meaning of "cause of action for personal injuries" so as not to include causes of action for libel, slander, malicious prosecution, or assault (the torts that abate under Section 37–2–4), but we do not construe the language in that manner. First, we are unaware of any usage of the term "cause of action for personal injuries" that would exclude those specific torts. Second, even were there an ambiguity in the language of Section 37–2–1, we avoid a construction that produces an absurd result. We presume that the legislature acted in a rational manner. *See State ex rel. Rodriguez v. American Legion Post No. 99*, 106 N.M. 784, 786–87, 750 P.2d 1110, 1112–13 (Ct.App.1987). Because we cannot conceive of a rational basis for the legislature to permit the survival of all causes of action for personal injury except for some peculiar category that includes libel, slander, malicious prosecution, and assault, we decline to construe "causes of action for personal injuries" to exclude such torts. Defendants argue that it is appropriate to foreclose a claim for assault once the alleged assailant has died because the cause of action derives from the criminal sanction, whose purpose is punishment and deterrence, and those purposes can no longer be served once the alleged assailant has died. This argument, however, would ap-

ply only to a civil claim for punitive damages against the decedent. No such claim is raised here. The purpose of the claim against the Estate in this case is solely to obtain compensation for actual loss. We see no reason why the legislature would wish to permit a claim for injuries caused by negligence to survive the death of the tortfeasor while not permitting survival of a claim for compensatory damages arising from an assault. Indeed, when statutory schemes have permitted the survival of most causes of action for personal injury but have excluded others, appellate courts have found the distinction to be so irrational as to deny equal protection of the law. *See Thompson v. Estate of Petroff,* 319 N.W.2d 400 (Minn.1982) (statute provided for survival of personal injury causes of action based on negligence, strict liability, statutory liability, or breach of warranty, but not those based on intentional torts); *Moyer v. Phillips,* 462 Pa. 395, 341 A.2d 441 (1975) (statute provided for survival of all causes of action except actions for slander or libel). Here, we need not decide any such constitutional issue. We simply give the phrase "cause of action for personal injuries" its natural meaning and avoid what other courts have found to be an irrational distinction. *See generally Rodgers v. Ferguson,* 89 N.M. 688, 556 P.2d 844 (Ct.App.1976) (critical discussion of common law survival rules).

In short, we reject Defendants' argument that Padilla's cause of action is barred by Section 37–2–4. The applicable section is Section 37–2–1, which clearly permits the present cause of action. We need not address whether Section 37–2–4 was repealed (at least in part) by implication when Section 37–2–1 was amended in 1941, nor whether Section 37–2–4 passes constitutional muster. Perhaps the legislature will act on the matter before there is any need for a judicial ruling.

## II. MOTION FOR RELIEF FROM JUDGMENT

■ Shortly after entry of the summary judgment, Defendants moved to set aside the judgment. Their motion relied upon Rules 1–059 and 1–060(B). On appeal, they rely only on Rule 1–060(B). In particular, they claim that they were entitled to relief under Rule 1–060(B)(1) for excusable neglect, and they appear also to claim that relief was required under Rule 1–060(B)(6), which permits a judgment to be set aside upon "any other reason justifying relief." We find no basis for relief under Rule 1–060(B)(1) or (6). We therefore need not consider whether Defendants adequately established a meritorious defense. *Cf. Rodriguez v. Conant,* 105 N.M. 746, 749, 737 P.2d 527, 530 (1987) (party seeking relief from *default* judgment must show (1) grounds for opening or vacating judgment and (2) a meritorious defense).

To begin with, we note that this case involves a summary judgment, not a default judgment. If Defendants were attempting to set aside a default judgment, they would face a less severe standard in establishing entitlement to relief under Rule 1–060(B). *Compare Restatement (Second) of Judgments* §§ 65–68 (1980) (grounds for relief from default judgment) *with id.* §§ 69–72 (relief from judgment in contested action). Defendants answered the Complaint. In this context, " 'default judgment' means a judgment rendered without any appearance." *Id.,* Introductory Note at p. 152.

The neglect by defense counsel was extreme. Counsel of record filed no response to requests for admission and no response to the Motion for Summary Judgment. They did not appear at the pretrial conference, at which the Motion for Summary Judgment was heard. They did not respond to the notice of presentment of the order for summary judgment, nor did they appear at court at the time that the judgment was presented. Defendants' counsel on appeal made no effort in their briefs to provide an excuse for these failures by the attorneys of record below. The neglect was not excusable.

■ Defendants' claim that they are entitled to relief is predicated on the conten-

tion that they should not be bound by the failures of their attorneys. This contention is contrary to settled law. The United States Supreme Court has written:

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney."

*Link v. Wabash R.R.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390–91, 8 L.Ed.2d 734 (1962) (quoting *Smith v. Ayer*, 101 U.S. 320, 326, 25 L.Ed. 955 (1879)). The court added:

> [K]eeping this suit alive merely because [defendant] should not be penalized for the omissions of his own attorney would be visiting the sins of [defendant's] lawyer upon the [plaintiff].

*Id.* at 634 n. 10, 82 S.Ct. at 1390 n. 10. *Accord Power Constructors v. Acres Am.*, 811 P.2d 1052, 1056 (Alaska 1991); *Suttles v. Vogel*, 160 Ill.App.3d 464, 112 Ill.Dec. 149, 157, 513 N.E.2d 563, 571 (1987), *reversed on other grounds*, 126 Ill.2d 186, 127 Ill.Dec. 819, 533 N.E.2d 901 (1988); *Charson v. Temple Israel*, 405 N.W.2d 895, 898 (Minn.Ct.App.1987); *Griffey v. Rajan*, 33 Ohio St.3d 75, 514 N.E.2d 1122, 1124 (1987); *Johnson v. Allis Chalmers Corp.*, 162 Wis.2d 261, 470 N.W.2d 859 (1991). The interests of the opposing party are not the only interests at stake. As the Wisconsin Supreme Court stated in explaining why dismissal was appropriate for violation of court orders by the attorney of an innocent party:

> The court's authority to dismiss actions emanates not merely from a need to prevent injustice to the parties in the particular action, but also from a need to prevent injustice to the operation of the judicial system as a whole. The circuit courts have a duty to discourage the protraction of litigation, preserve judicial integrity, and promote the orderly processing of cases. Dismissal, in some instances, is necessary to maintain these interests. Each time the court's orders are disregarded, the administration of justice suffers because the court's time is misused to accommodate the noncomplying party's dilatoriness at the expense of the other party and all other litigants awaiting the court's attention. A continuing failure to sanction may be perceived by the noncomplying party and other litigants as a green light to flaunt court orders.

*Id.* 470 N.W.2d at 867 (citation omitted).

The record in this case gives us no reason to consider a limitation on the general rule binding a party to the conduct of its attorney. The affidavits of Martha Griego and Emma Griego (personal representative of the Estate), which they submitted in support of the motion to set aside the summary judgment, stated that they had not been informed of pertinent events in the case. Emma Griego's affidavit also stated that (1) Lance Bailey (an attorney of record for Defendants) told her that he thought Lee Deschamps (who entered an appearance in the probate matter but not in this case) had taken care of the matter, and (2) Deschamps told her, "I dropped the ball." The affidavits, however, fail to set forth fully the relationship of the Griegos with their attorneys, such as any attempts by the Griegos in the seven months prior to judgment to keep apprised of the course of the litigation. This lapse is of particular interest in light of the affidavit of Padilla's attorney, which states that Bailey told him that (1) he thought he had been fired in the fall of 1988 as a result of a dispute over his bill, (2) he gave the Griegos a copy of their file at that time, and (3) Deschamps had told him that he had given the Griegos a copy of his file in the fall of 1988 and closed his office file.

The record in this case shows that the district court did not abuse its discretion in determining that Defendants had failed to establish adequate grounds under Rule 1–060(B) to set aside the summary judgment.

## III.   CONCLUSION

For the above reasons, we affirm the summary judgment entered by the district court.   No costs are awarded.

ALARID, C.J., and MINZNER, J., concur.