1998-NMCA-161

967 P.2d 864

**Linda K. ADAMS, Plaintiff–Appellant,**

v.

**PARA–CHEM SOUTHERN, INC., a foreign corporation, Defendant–Appellee.**

No. 18663.

Court of Appeals of New Mexico.

Oct. 20, 1998.

Steven L. Tucker, Tucker Law Firm, P.C., Santa Fe, Leof T. Strand, Leof T. Strand, Attorney at Law, P.C., Albuquerque, for Appellant.

Wayne C. Wolf, Wayne C. Wolf, Law Offices, Albuquerque, Roderick A. Dorr, Albuquerque, for Appellee.

*OPINION*

BUSTAMANTE, J.

{1} This is a personal injury action in which default judgment for a substantial sum was entered against Para–Chem Southern, Inc. (Defendant). Linda K. Adams (Plaintiff) appeals from an order vacating the default judgment. Plaintiff asserts that the trial court erred when it failed or refused to consider the conduct of the Defendant's insurer in deciding whether the standard for relief under Rule 1–060(B)(1) NMRA 1998 had been met. Plaintiff also argues that the trial court erred in finding that the Defendant's own conduct met the standard of Rule 1–060(B)(1). We reverse and remand for reinstatement of the judgment.

*PROCEEDINGS*

{2} Plaintiff filed her complaint on March 28, 1994, against Defendant and Graff Flooring Contractor, Inc. (Graff). The complaint stated a products liability claim against Defendant as the manufacturer of a carpet adhesive which allegedly caused Plaintiff to suffer serious health problems. Graff was alleged to have installed the carpet using the defective adhesive. Defendant was served through its agent at its offices in South Carolina on August 30, 1994. Defendant does not argue that service was in any way inadequate or improper. Defendant did not enter an appearance, file an answer, or otherwise respond to the complaint until December 4, 1996, when it filed its Motion to Vacate Default Judgment and Motion to Stay Execution of Judgment.

{3} Plaintiff filed her application for default judgment on May 18, 1995, and the trial court entered a default judgment the same day. The form of order entered on May 18 did not provide for the amount of the judgment. The final form of judgment, including the amount, was entered on September 3, 1996.

{4} Graff was dismissed from the suit on March 21, 1996, after entry of default against Defendant, but prior to entry of the final judgment. The record does not reveal the reason for Graff's dismissal. Graff's initial pleading requesting dismissal, which it filed on October 24, 1995, was entitled "Motion to Enforce Agreement" and generally asserted an oral agreement to dismiss between the parties. This motion was never heard. Graff's dismissal was eventually accomplished by an unopposed motion and order.

{5} In its motion to vacate default judgment, Defendant blamed its failure to defend on its insurer. According to the affidavit of Roger Wilson (the person through whom Defendant was served in 1994), Defendant forwarded the claim to its insurance broker on September 1, 1994. Defendant's insurance broker in turn forwarded the claim to The Home Insurance Company (Home), Defendant's liability insurance carrier, on the same day. The claim was initially sent to Home's claim office in Denver, Colorado. Thereafter the claim was transferred to Home's San Francisco office, "within thirty (30) days after receiving the claim." It was then transferred to Home's New York office "on or before January 22, 1995 for handling." Apparently, the New York office lost the claim file and the "claim and lawsuit was [sic] refaxed to the Home's New York claim office on January 22, 1995."

{6} Thus, Home did not enter an appearance, file an answer, contact Plaintiff's counsel, or otherwise respond or react to the claim on behalf of its insured for a period in excess of two years. Defendant did not submit an affidavit from anyone internal to Home explaining Home's conduct or failure to act.

{7} Defendant itself did not receive any communication from Home after January 22, 1995, until it received a denial of coverage letter dated November 4, 1996. Wilson's affidavit acknowledges that Defendant did not inquire of its insurer concerning the status of the case in the interim. Assuming it was Defendant who re-faxed the claim to Home on January 22, 1995, Defendant thus failed to inquire as to the status of the claim for a period of at least twenty-two months. Wilson's affidavit explains Defendant's failure to inquire as follows:

8. It has been my experience in my five (5) years as Vice President and Chief Financial Officer of Para–Chem Southern, Inc., that once a claim or lawsuit is for-

warded to our insurance carrier, the carrier will commence a prompt investigation or will promptly retain defense counsel to file a timely answer on behalf of our company and will otherwise protect our company's interests. Moreover, it is not at all unusual for our insurance company not to contact us regarding the status of a pending claim or suit for months or even a year or more during the pendency of a claim or suit while the matter is being handled. Therefore, I was not alarmed at not hearing anything from The Home after notice was given.

*ANALYSIS*

{8} In district court, Defendant sought relief from the default judgment pursuant to Rule 1–060(B)(1), though it also relied on cases decided under Rule 1–060(B)(6). Under Rule 1–060(B)(1), Defendant has the burden of demonstrating that its failure to timely respond to the complaint was the result of "mistake, inadvertence, surprise or excusable neglect." Plaintiff argued below and argues here that the conduct of both Defendant and its insurer must be taken into account in deciding whether the standard has been met. In short, Plaintiff argues that the "admittedly inexcusable conduct" of Home should be imputed to Defendant. Defendant counters that New Mexico law does not, and should not, impute an insurer's negligence to its defendant insureds. In support of its position, Defendant relies on a trio of cases: *Wakely v. Tyler*, 78 N.M. 168, 429 P.2d 366 (1967); *Weisberg v. Garcia*, 75 N.M. 367, 404 P.2d 565 (1965); and *Dyer v. Pacheco*, 98 N.M. 670, 651 P.2d 1314 (Ct.App.1982).

{9} Believing Plaintiff's position represents the better rule, supported by the weight of authority, we hold that the conduct of a defendant's insurer in failing to respond timely to a complaint should be imputed to the defendant. Thus, the insurer's conduct should be considered along with the defendant's acts in determining whether there has been excusable neglect warranting relief from the default. In so holding, we acknowledge that we are arguably fashioning a new rule in New Mexico. However, we believe the rule we state here is amply supported, if

not compelled, by more recent case law than *Wakely, Weisberg,* and *Dyer.* We will first examine the development of the supporting New Mexico case law and will then examine the development of the issue in other jurisdictions.

{10} The parties argue earnestly and at length over similarities and distinctions between the factual and procedural posture of this case and that of *Wakely, Weisberg,* and *Dyer.* Perhaps the most telling of the differences is that *Dyer* was decided under a predecessor to Rule 1–060(B)(6). *See Dyer,* 98 N.M. at 673, 651 P.2d at 1317. We could therefore hold that the district court erred to the extent it relied on a standard applicable to Rule 1–060(B)(6), rather than Rule 1–060(B)(1). However, we do not believe the distinctions drawn by the parties are determinative or crucial to our decision. We prefer to base our decision on a more fundamental ground. As such, for purposes of the argument, we will accept Defendant's characterization of the holdings in these cases.

{11} *Wakely* and *Weisberg* can be read expansively to stand for the proposition that the reasons for an insurance company's delay in responding to the complaint are irrelevant for Rule 1–060(B)(1) purposes because the insured is the real party in interest. *See Weisberg,* 75 N.M. at 370, 404 P.2d at 566. In addition, *Dyer* can be interpreted to indicate obliquely that a defendant will not be held responsible for its insurer's failures. This interpretation flows from language in *Dyer* apparently absolving insureds of any responsibility to inquire as to the status of their case once it is submitted to the insurance company for handling. *See* 98 N.M. at 674, 651 P.2d at 1318.

{12} More recent New Mexico case law casts doubt on the continuing vitality of these propositions. For example, in *Padilla v. Estate of Griego,* 113 N.M. 660, 664, 830 P.2d 1348, 1352 (Ct.App.1992), summary judgment was entered against a defendant at least in part because of defense counsel's "extreme" negligence in failing to respond in any way to a motion for summary judgment. Defendants filed a motion for relief from the summary judgment pursuant to Rules 1–060(B)(1) and 1–060(B)(6), asserting that

they should not be bound for the failures of their attorneys. We rejected this contention as "contrary to settled law." *Id.* at 665, 830 P.2d at 1353. *Padilla* relied in part on agency theory, noting that clients should be bound by their attorney representative's actions in the same way they would be bound by the conduct of others acting for them. *See id.; cf. Marinchek v. Paige*, 108 N.M. 349, 352, 772 P.2d 879, 882 (1989) (counsel's actual notice of risk of default was charged to the defendant). We also noted, however, that the clients had not provided the trial court any details about their efforts to "keep apprised of the course of the litigation." *Padilla*, 113 N.M. at 665, 830 P.2d at 1353. Thus, we said that the clients in *Padilla* had not given any "reason to consider a limitation on the general rule binding a party to the conduct of its attorney." *Id. Padilla* represents a retreat from the exculpatory approach evident in the language of *Dyer*, though admittedly it did not involve an insurer.

{13} *Padilla* was followed by our Supreme Court's decision in *Resolution Trust Corp. v. Ferri*, 120 N.M. 320, 901 P.2d 738 (1995). In *Ferri*, a default judgment had been entered against the defendant. Nineteen months after entry of the judgment, the defendant filed a motion under Rule 1–060(B)(6) to set the judgment aside, asserting as her grounds a mistake of law by the trial court and her attorney's failure to act. The trial court denied the motion. Affirming, our Supreme Court cited *Padilla* with approval and agreed that parties "are deemed bound by the acts and failures of their lawyers." *Ferri*, 120 N.M. at 325, 901 P.2d at 743.

{14} In addition, the Supreme Court noted that generally a claim of attorney negligence should be treated as a claim of excusable neglect under Rule 1–060(B)(1), not as an exceptional circumstance under Rule 1–060(B)(6). The Supreme Court did acknowledge, though, that if the "attorney's failure rises to the level of *gross negligence*, the trial court may find exceptional circumstances warranting reopening a default judgment under [Rule] 1–060(B)(6)." *Ferri*, 120 N.M. at 325, 901 P.2d at 743. To gain the benefit of this exception, however, the client "must demonstrate that he or she was diligent in pursuing all claims but was thwarted in those efforts by the gross negligence of the attorney." *Id.* at 326, 901 P.2d at 744.

{15} Together, *Padilla* and *Ferri* establish that: (1) a party will generally be bound by his or her attorney's actions; and (2) to escape the consequences of his or her attorney's gross acts and failures, the client must demonstrate personal diligence which was thwarted by the attorney. The question this case poses is whether the rule should be different for the conduct of the insurance company chosen by the insured to respond to litigation. Apart from relying on its triumvirate of cases, Defendant offers no reasoned distinction. We see no basis in this context for distinguishing between the negligence of counsel and the negligence of an insurer. We agree with the observation by the Missouri appellate court when faced with the same issue:

> Reason and logic render impossible the acceptance of any real distinction between the inexcusable neglect of a lawyer ... and the inexcusable neglect of a claims manager and attorney for the defendant's insurer. Both occupy a contractual relationship with the client, the prime purpose of which is to handle the litigation within the framework of judicial proceedings. But even of more significant force is that by undertaking such responsibilities they also assume an obligation to third parties interested in the matter and to the courts administering and judicially determining the controversy.

*Ward v. Cook United, Inc.*, 521 S.W.2d 461, 473 (Mo.Ct.App.1975). *Accord Truhe v. Grimes*, 318 Ark. 117, 884 S.W.2d 255, 257 (Ark.1994); *Griffey v. Rajan*, 33 Ohio St.3d 75, 514 N.E.2d 1122, 1125 (Ohio 1987) (both quoting *Ward* with approval).

{16} The weight of authority from other jurisdictions is in accord with our holding. The majority of the cases addressing this question make clear that in order to merit relief from default judgment, the conduct of the party and its litigation agents—attorneys and insurers—must be explained and must meet the standard of mistake or excusable neglect. *See Henline, Inc. v. Martin*, 169 Ind.App. 260, 348 N.E.2d 416, 420–21 (Ind.

Ct.App.1976) ("Considering the role of defendants' insurance company as the entity in charge of defendants' defense, it would not be unreasonable for the trial court to analogize the status of the company's claims adjuster with that of an attorney acting on defendants' behalf so as to apply the 'general rule ... that the negligence of the attorney is the negligence of the client[.]' ") (quoting *Moe v. Koe*, 165 Ind.App. 98, 330 N.E.2d 761, 765 (Ind.Ct.App.1975)); *St. Arnold v. Star Expansion Indus.*, 268 Or. 640, 521 P.2d 526, 533 (Or.1974) (in banc) (adopting principle that insurer, by retaining control of suit brought against its insured, became agent of the insured); *Stevens v. Gulf Oil Corp.*, 108 R.I. 209, 274 A.2d 163, 164 (R.I.1971) (insurer should be treated as agent of insured for purposes of considering excusable neglect to file answer); *Memorial Hosp. Sys. v. Fisher Ins. Agency, Inc.*, 835 S.W.2d 645, 652 (Tex. Ct.App.1992) ("When a party relies on an agent or representative to file an answer, the party must establish that the failure to answer was not intentional or the result of conscious indifference of either the party or the agent."); *see also Spica v. Garczynski*, 78 F.R.D. 134 (E.D.Pa.1978); *Rhodes W. v. Clarke*, 14 Ariz.App. 62, 480 P.2d 677 (Ariz. Ct.App.1971); *see generally* J.P. Ludington, Annotation, *Failure of Liability Insurer, After Notification, to Defend Suit Against Insured, as Warranting Opening Default Against Insured on Ground of Inadvertence or Excusable Neglect*, 87 A.L.R.2d 870 (1963 & Supp.1991), and the cases cited therein.

{17} Imputation of the insurer's conduct to its insured is also supported by the Restatement (Second) of Judgments § 67 (1982). As noted in comment c to § 67,

> *Neglect of attorney or insurer.* A subsidiary issue in determining excusable neglect is whether inexcusable neglect by the party's attorney or insurer is to be attributed to the party. The effect of attributing such neglect to the party himself is to impose judgment liability on him despite his effort to place responsibility for defending the suit in proper hands. The effect of not attributing the neglect to the party is to excuse the attorney of what amounts to professional negligence or to excuse the insurer of neglect in its duty to defend the insured. If the party obtaining the judgment was on notice of facts indicating the neglect by the attorney or insurer, that is a factor weighing in favor of relief. In the absence of such indication, however, the consequences of the neglect ordinarily should be charged to the defaulting party—who contracted with the attorney or insurer and who then may have an action for negligence against one of them—rather than the party who obtained the judgment.

{18} There is authority to the contrary. *See, e.g., Hinz v. Northland Milk & Ice Cream Co.*, 237 Minn. 28, 53 N.W.2d 454, 456 (Minn.1952); *Abrams v. Barnes*, 16 A.D.2d 936, 229 N.Y.S.2d 657 (N.Y.App.Div.1962) (mem.); *King v. Montz*, 219 N.W.2d 836 (N.D.1974). However, these cases are of relatively older vintage, and they appear inconsistent with recent New Mexico cases. In addition, *Abrams* failed to analyze the issue in any meaningful way. Finally, at least *Hinz* involved a marginal factual scenario which merited relief regardless of who was at fault in failing to timely respond. In *Hinz*, the complaint was filed and served in mid-December 1951, and was forwarded to the defendant insurer within a few days thereafter. The insurer mislaid the papers and did not forward them to its attorneys for answering until December 29, when the defendant was already in default. The trial court entered default on January 2, 1952. Defendant immediately challenged the default. The trial court refused to grant any relief, and the Minnesota Supreme Court understandably reversed (as would we). The Court noted that in this circumstance the negligence of the insurer should not be imputed to the defendant because the defendant had acted promptly and diligently and no substantial prejudice would result to the plaintiff by granting relief. *Hinz*, 53 N.W.2d at 455–56. The Court's imputation discussion was not necessary to its ruling. In any event the facts in *Hinz* are clearly not the facts we face here.

{19} Turning to the facts in this case, and considering Defendant's and Home's conduct, we conclude that the trial court erred in vacating the default judgment.

We normally review a trial court's decision to deny or grant relief from default judgment for abuse of discretion. *See Nichols v. Nichols*, 98 N.M. 322, 326, 648 P.2d 780, 784 (1982). "However, the abuse-of-discretion standard does not preclude an appellate court from correcting errors premised on the trial court's misapprehension of the law[.]" *State v. Barnett*, 1998–NMCA–105, ¶ 13, 125 N.M. 739, 965 P.2d 323. The record does not reveal the trial court's rationale for its ruling. To the extent it failed or refused to take into account Home's conduct, it erred. Rather than remand for reconsideration, however, we will conduct our own independent review because there are no factual issues requiring resolution. *See State v. Attaway*, 117 N.M. 141, 144–45, 870 P.2d 103, 106–07 (1994) ("If ... the question requires [a reviewing court] to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles, then the concerns of judicial administration will favor the appellate court, and the question should be classified as one of law and reviewed de novo.") (quoting *United States v. McConney*, 728 F.2d 1195, 1202 (9th Cir.1984) (en banc)).

{20} In conducting our review, of course, we adhere to the oft-repeated maxim that default judgments are not favored, and the corollary notion that "generally, cases should be decided upon their merits." *Rodriguez v. Conant*, 105 N.M. 746, 749, 737 P.2d 527, 530 (1987). We are, thus, mindful of our Supreme Court's admonition that in considering a motion for relief from a default judgment we should resolve all doubts in favor of a trial on the merits. *See id.*

■ {21} Rule 1–060(B)(1) requires a defaulted defendant to show both applicable grounds for vacating the judgment—for example, excusable neglect—and a meritorious defense. *See Rodriguez*, 105 N.M. at 749, 737 P.2d at 530. The undisputed fact is that Home—and thus Defendant—failed to react to the complaint for over two years. Defendant contends that this lengthy period of time should not be held against it because the delay was actually caused by Plaintiff's leisurely pace in obtaining the default, proving damages, and obtaining the final judg-

ment. Once Defendant got notice of the final judgment, it acted rather quickly to set it aside. However, we do not believe that it is a plaintiff's burden to expedite the case for the benefit of a defendant. The fact remains that there was a long period of time during which neither Defendant nor its insurer did anything to·respond to the case.

{22} We have already noted that neither Defendant nor Home has explained Home's failures to respond to the complaint. Defendant did not even attempt to provide an explanation for Home's conduct, much less try to make a showing of *excusable* neglect for it. In the absence of any explanation for Home's conduct, there was "no excuse shown and no legal ground for vacating the default." *Richas v. Superior Ct.*, 133 Ariz. 512, 652 P.2d 1035, 1038 (Ariz.1982) (en banc) (insurer liable for payment of judgment and in charge of defense must establish an excusable neglect for its own conduct and its failure to do so is attributable to insured). Thus, Home's conduct provides no support for the trial court's decision, and in fact detracts from it.

{23} In addition, Defendant failed to demonstrate excusable neglect based on its own conduct. Defendant failed to inquire about the state of the case for at least twenty-two months. Assuming that Home's conduct should be characterized as grossly negligent, and applying the Supreme Court approach in *Ferri*, Defendant would be required to show that it was personally diligent in pursuing its defense and that it was hindered by Home's conduct. Defendant does not assert it was prevented from inquiring. It simply relied entirely on its insurer. We hold that twenty-two months is an unreasonable length of time and that Defendant has failed to demonstrate personal diligence as a matter of law. "A defendant cannot assert a justifiable belief that his interests were being protected, if he fails to inquire concerning possible problems of which he should have been aware under the circumstances." *Fox v. Volkswagon of Am., Inc.*, 328 Pa.Super. 338, 476 A.2d 1360, 1361 (Pa.Super.Ct.1984), *aff'd*, 507 Pa. 429, 490 A.2d 438 (Pa.1985); *see also, Memorial Hosp. Sys.*, 835 S.W.2d at 652 ("It is reasonable to assume that when a prudent per-

son is served with a petition concerning a lawsuit and is relying on his agent to represent his interest, he is going to make sure that his agent is using due diligence in handling the lawsuit.").

{24} We deal with two final matters summarily. Plaintiff argues that her dismissal of Graff with prejudice constitutes an intervening equity preventing vacatur of the default. Because of our resolution of the primary issue, we do not need to address this problem. Finally, Defendant complains that under Rule 1-055 NMRA 1998 it was improper for Plaintiff to seek and enter default without first giving notice to Defendant. This contention is fully answered by our Supreme Court's decision in *Merrill v. Tabachin, Inc.*, 107 N.M. 802, 803, 765 P.2d 1170, 1171 (1988). Defendant never filed any documents with the court prior to entry of default. Thus, under Merrill, Plaintiff had no duty to provide any notice to Defendant before seeking default.

## CONCLUSION

{25} Combining the failure to act of Home and the failure to inquire by Defendant, and taking into consideration the utter failure of the Defendant to provide an explanation for Home's conduct, we hold that there was no basis for vacating the default judgment. We thus reverse and remand with instructions to reinstate the judgment effective the date of its original entry. Plaintiff is awarded her costs on appeal.

{26} **IT IS SO ORDERED.**

APODACA and PICKARD, JJ., concur.