2007-NMCA-011

149 P.3d 1017

**CAPCO ACQUISUB, INC.,**
Plaintiff–Appellee,

v.

**GREKA ENERGY CORPORATION,**
Defendant–Appellant,

and

Michael Harton, Linda Harton, Joe Ann Duncan (a/k/a Joe Ann Missey and f/k/a Joe Ann Anderson), Robert Wraldo Duncan, Jr., Ivalee Thompson, Betty Baum Cooper, Deborah Thompson (f/k/a Debra Ann Campbell), Tom Ray Gainer (As His Sole And Separate Property), and Lela Renee Thomas (As Her Sole And Separate Property), Plaintiffs–Appellees,

v.

Greka Am, Inc., Saba Energy of Texas, Inc., Strata Various L.C., Tatum Energy, L.C., Capco Acquisub, Inc., Dr. Iftikhar Ahmad, Darsham S. Mundy, Dr. Hamid Ur Rahman, Muhammad Saeed, Kaleem Ahmad Sayed, Seher Enterprises, Inc., and Summer Enterprises, Inc., Defendants–Appellants.

No. 25,816.

Court of Appeals of New Mexico.

Dec. 4, 2006.

Reagan & Sanchez, P.A., Mark Terrence Sanchez, Gary Don Reagan, Hobbs, NM, for Appellee Capco Acquisub, Inc.

Keleher & McLeod, P.A., Thomas C. Bird, David W. Peterson, Gary J. Van Luchene, Nikolai N. Frant, Albuquerque, NM, for Appellants Greka AM, Inc. and Saba Energy of Texas, Inc.

Short & Johnston, P.C., Jeffrey M. Johnston, Michael A. Short, of Counsel, Midland, TX, for Appellees.

## OPINION

BUSTAMANTE, Chief Judge.

{1} This case requires us to determine whether the district court erred in denying Appellants' motion for extension of time in which to file a notice of appeal under Rule 12–201(E)(2) NMRA. We conclude that the district court did not abuse its discretion in denying the motion. Accordingly, we affirm.

## BACKGROUND

{2} This appeal originates from a judgment entered in a case concerning claims related to oil and gas properties in Lea County, New Mexico. The judgment involved two separate lawsuits that were consolidated for trial: *Capco Acquisub, Inc. v. Greka Energy Corporation,* No. CV–2001–249 (Lea County, N.M., filed July 6, 2001) and *Harton v. Greka AM, Inc.,* No. CV–2001–417 (Lea County, N.M., filed Oct. 29, 2001). Defendants Greka AM, Inc. and Saba Energy of Texas, Inc. (collectively, the Subsidiaries or Appellants), are subsidiaries of Defendant Greka Energy Corporation (GEC) and bring the present appeal.

{3} Throughout the course of the litigation below, GEC and the Subsidiaries experienced substantial difficulty in complying with the judicial process. For example, the district court sanctioned GEC and the Subsidiaries for failing to comply with discovery rules and for failing to appear at a discovery hearing. Furthermore, after the district court allowed their counsel to withdraw from the case, GEC and the Subsidiaries failed to retain new counsel and failed to appear for the final trial on the merits.

{4} The district court entered judgment against GEC and the Subsidiaries on January 18, 2005. GEC, having finally retained new counsel, filed a motion to vacate the judgment on February 16, 2005. The Subsidiaries neither joined in GEC's motion, nor did they participate in the hearing on the motion. The district court denied GEC's motion on February 18, 2005, and GEC filed a timely notice of appeal the same day. Once again, GEC filed the notice of appeal solely on its own behalf. The Subsidiaries assert that they believed they were to be included in GEC's notice of appeal and that they did not become aware of their omission from the notice until "early March" of 2005. The Subsidiaries' difficulties continued as they failed to file their own timely notice of appeal. In an attempt to preserve their chances of appellate review, the Subsidiaries filed a motion on April 19, 2005, for an extension of time to file a notice of appeal. The district court held a hearing on that motion on April 22, 2005.

{5} As grounds for their motion, the Subsidiaries asserted that their omission from GEC's post-trial motion and notice of appeal was a result of a miscommunication with their attorneys. More specifically, the Subsidiaries claimed that Susan Whalen, general counsel for GEC and the Subsidiaries, understood that the law firm of Modrall, Sperling, Roehl, Harris & Sisk, P.A. (the Modrall firm) would file the motion and notice of appeal on behalf of all three entities. Ms. Whalen submitted an affidavit in which she stated that she had several conversations with the Modrall firm that were "centered around those steps to be taken to protect the interests of [GEC and the Subsidiaries] with regard to the Amended Judgment and the perfection of an appeal ... on behalf of [GEC and the Subsidiaries]." Ms. Whalen further noted in her affidavit that she did not receive a copy of GEC's notice of appeal until "after the date it was filed[,]" and that the Subsidiaries did not become aware of their omission from the notice of appeal until "early March." Thus, the Subsidiaries argued, their failure to file a timely notice of appeal was due to excusable neglect.

{6} Appellees opposed the motion, arguing that the district court no longer had jurisdiction to hear the motion and, alternatively, that the Subsidiaries' conduct in failing to file

a timely notice of appeal did not amount to excusable neglect. In their reply to the Subsidiaries' motion to extend, some of the Appellees pointed out that Ms. Whalen was present at a hearing on February 18, 2005, at which trial counsel for GEC acknowledged that GEC had thirty days from the disposition of its postjudgment motions in which to file its notice of appeal. Thus, these Appellees argued, nothing prevented the Subsidiaries from filing a timely notice of appeal.

{7} The district judge denied the Subsidiaries' motion from the bench, stating that, while he was unsure about the jurisdictional question and was planning to research it, he would deny the motion in any event because of "the history of this case," referring to the Subsidiaries' "complete indifference" to the judicial process throughout the litigation. The district court entered its written order denying the motion to extend on April 25, 2005. The written order did not indicate whether the denial was based on the district court's lack of jurisdiction to extend the time for filing a notice of appeal, or whether the denial was based on the court's finding that the Subsidiaries' conduct did not amount to excusable neglect.

## DISCUSSION

{8} The Subsidiaries bring the present appeal challenging several of the district court's rulings, including: (1) the denial of the Subsidiaries' motion for an extension of time to file a notice of appeal; (2) the award of punitive damages against the Subsidiaries; (3) the imposition of discovery sanctions against the Subsidiaries; and (4) the district court's jurisdiction to hear the Capco Plaintiffs' claims against the Subsidiaries. Because we conclude that the district court did not err in denying the Subsidiaries' motion to extend time to file a notice of appeal, we address that issue exclusively and do not reach the remaining issues raised by the Subsidiaries.

**The Subsidiaries' Motion to Extend Time to File Notice of Appeal**

{9} The Subsidiaries argue that the trial court abused its discretion in denying their motion for an extension of time to file their notice of appeal based on three rationales: (1) under the present circumstances, procedural formalities should not outweigh the Subsidiaries' right to an appeal under art. VI, § 2 of the New Mexico Constitution; (2) the disposition of GEC's post-trial motion pursuant to NMSA 1978, Section 39-1-1 (1917), tolled the district court's jurisdiction to grant the extension to the Subsidiaries under Rule 12-201(E); and (3) the Subsidiaries were entitled to an extension of time in which to file their notice of appeal based on their excusable neglect. Conversely, Appellees urge us to affirm, arguing that: (1) the district court did not have jurisdiction to extend the time period for the Subsidiaries to file a notice of appeal under Rule 12-201(E); and (2) even if the district court did have jurisdiction, the Subsidiaries' actions in failing to file a timely notice of appeal did not constitute excusable neglect. We begin by addressing the question of whether the district court had jurisdiction to extend the time period for the Subsidiaries to file a notice of appeal because, if the district court did not have jurisdiction, the question regarding excusable neglect is moot. In resolving the question of the district court's jurisdiction, we simultaneously consider the Subsidiaries' first point regarding their constitutional right to an appeal as it relates to our construction of the New Mexico Rules of Appellate Procedure.

**1. The District Court Had Jurisdiction to Extend the Time Period in Which Appellants Could File a Notice of Appeal**

■ {10} Whether a trial court has jurisdiction to extend the time period in which a party may file a notice of appeal is a question of law that we review de novo. *Chavez v. U-Haul Co.*, 1997-NMSC-051, ¶ 13, 124 N.M. 165, 947 P.2d 122. Rule 12-201 of the New Mexico Rules of Appellate Procedure governs extensions of time to file a notice of appeal. *See* Rule 12-201(E). Generally, an appellant must file a notice of appeal "within thirty (30) days after the judgment or order appealed from is filed in the district court clerk's office." Rule 12-201(A)(2). However, the filing of certain post-trial motions shifts the commencement of the thirty-day time limit in which an appellant may file a notice of appeal to "the entry of an order expressly disposing of the motion or the date of any automatic denial of the motion ....,

whichever occurs first." Rule 12–201(D). Post-trial motions filed pursuant to Section 39–1–1 are among those enumerated in Rule 12–201(D) that toll the deadline for filing a timely notice of appeal. Rule 12–201(D).

■ {11} Furthermore, before the time for filing the notice of appeal has expired, the district court may extend the time for filing a notice of appeal "upon a showing of good cause ... for a period not to exceed thirty (30) days from the expiration of the time otherwise prescribed by this rule." Rule 12–201(E)(1). Once the time has expired for filing a notice of appeal, the district court may still grant an extension for up to thirty days from the original expiration date "upon a showing of excusable neglect or circumstances beyond the control of the appellant[.]" Rule 12–201(E)(2). However, "[n]o motion for extension of time to file the notice of appeal may be granted after sixty (60) days from the time the appealable order is entered. If the motion is not granted within the sixty (60) days, the motion is automatically denied." Rule 12–201(E)(4). Moreover, if a litigant has filed one of the post-trial motions enumerated in Rule 12–201(D), the sixty-day time period begins to run from either the entry of an order disposing of the motion or the date of any automatic denial of the motion, whichever occurs first. Rule 12–201(E)(4). Therefore, "where post-trial motions are filed, the district court retains, for a sixty-day period from the disposition of a post-trial motion, the authority to grant an extension up to a maximum of thirty days." *Chavez*, 1997–NMSC–051, ¶ 12, 124 N.M. 165, 947 P.2d 122.

{12} Appellants argue that we should construe the above rules in light of the constitutional mandate in New Mexico that "an aggrieved party shall have an absolute right to one appeal." N.M. Const. art. VI, § 2. Our Supreme Court has noted that the courts "must ensure that the procedural rules expedite rather than hinder this right." *Trujillo v. Serrano*, 117 N.M. 273, 276, 871 P.2d 369, 372 (1994) (citing *Govich v. N. Am. Sys., Inc.*, 112 N.M. 226, 230, 814 P.2d 94, 98 (1991)). The Court further stated that

[m]odern rules promote expedience and uniformity and attempt to balance constitutional rights with the need for the efficient administration of justice. As we have previously stated, "[i]t is the policy of this court to construe its rules liberally to the end that causes on appeal may be determined on the merits, where it can be done without impeding or confusing administration or perpetrating injustice."

*Id.* (citation omitted). Therefore, "[p]rocedural formalities should not outweigh basic rights where the facts present a marginal case which does not lend itself to a bright-line interpretation." *Id.*

■ {13} In light of the above policy favoring review on the merits, the Court held that "an untimely filing of a notice of appeal is not circumscribed by [a] bright ... jurisdictional line." *Id.* at 277, 871 P.2d at 373 (citation omitted). Thus, "while lack of subject matter jurisdiction precludes the possibility of hearing a case, it has occasionally been possible for an appellant to file a late notice of appeal and still invoke the court's jurisdiction." *Id.* (citation omitted). The Court described the timely filing requirement for a notice of appeal as a "mandatory precondition [to the exercise of jurisdiction] rather than an absolute jurisdictional requirement," which means that an appellate court has the discretion to entertain an untimely filed appeal under unusual circumstances. *Id.* at 278, 871 P.2d at 374.

{14} In order to resolve the question of whether the district court had jurisdiction to grant an extension in the present case, we must first determine the relevant deadlines with respect to the Subsidiaries. Ordinarily, the thirty-day time limit for filing a notice of appeal under Rule 12–201(A)(2), and the sixty-day time limit beyond which the district court cannot grant an extension under Rule 12–201(E)(4), would have commenced once the district court entered its judgment on January 18, 2005. However, GEC timely filed a post-trial motion to vacate the judgment on February 16, 2005. GEC moved to vacate the judgment pursuant to Rule 1–060(B) NMRA and Section 39–1–1. The motion pursuant to Section 39–1–1 tolled both the thirty-day time limit in which GEC could file a notice of appeal under Rule 12–201(D), as well as the sixty-day time limit in which the district court could extend GEC's time to file a notice of appeal under Rule 12–

201(E)(4). *See* Rule 12–201(D) (enumerating Section 39–1–1, but not Rule 1–060(B), as authority for tolling time to file notice of appeal); Rule 12–201(E)(4) (enumerating Section 39–1–1, but not Rule 1–060(B), as authority for tolling time in which the district court may extend time to file notice of appeal). What remains less clear, however, is whether GEC's post-trial motion—in which the Subsidiaries did not join—tolled the thirty- and sixty-day time limits for the Subsidiaries as well.

{15} Looking at the plain language of Rules 12–201(D) and 12–201(E)(4), it is not readily apparent whether the tolling provisions apply only to the party filing one of the enumerated post-trial motions, or whether the tolling provisions apply to all parties. Rule 12–201(D) reads, in relevant part:

> **D. Post-trial motions extending the time for appeal.** If a party timely files a motion pursuant to Section 39–1–1 NMSA 1978, Paragraph B of Rule 1–050 NMRA, Paragraph D of Rule 1–052 NMRA, or Rule 1–059 NMRA or a motion pursuant to Rule 5–614 NMRA based on grounds other than newly discovered evidence, the full time prescribed in this rule for the filing of the notice of appeal shall commence to run and be computed from either the entry of an order expressly disposing of the motion or the date of any automatic denial of the motion under that statute or any of those rules, whichever occurs first.

Similarly, Rule 12–201(E)(4) reads:

> **E. Other extensions of time for appeal.**
>
> . . . .
>
> (4) No motion for extension of time to file the notice of appeal may be granted after sixty (60) days from the time the appealable order is entered. If the motion is not granted within the sixty (60) days, the motion is automatically denied. If a post-trial motion is timely filed pursuant to Section 39–1–1 NMSA 1978, Paragraph B of Rule 1–050 NMRA, Paragraph D of Rule 1–052 NMRA or Rule 1–059 NMRA or a motion pursuant to Rule 5–614 NMRA based on grounds other than newly discovered evidence, this sixty (60) day period begins to run from either the entry of an order expressly disposing of the motion or the date of any automatic denial of the

motion under that statute or any of those rules, whichever occurs first.

Appellees urge us to hold that the tolling effect of Rules 12–201(D) and 12–201(E)(4) only applies to the party filing the post-trial motion because the rules do not specifically state otherwise. *Cf.* Fed. R.App. P. 4(a)(4)(A) (the federal counterpart to our Rule 12–201(D)) (specifically stating that, if a party timely files one of the enumerated post-trial motions, "the time to file an appeal runs for *all parties* from the entry of the order disposing of the last such remaining motion" Fed. R.App. P. 4(a)(4)(A) (emphasis added)). We note, however, that neither of our rules expressly or impliedly *limits* its tolling provision to the party filing the applicable post-trial motion. We hold instead that policy considerations weigh in favor of applying the tolling provisions of Rule 12–201(D) and Rule 12–201(E)(4) to all parties in the litigation.

{16} First, an important policy, as we have previously noted, is to construe the Rules of Appellate Procedure liberally so that appeals may be determined on their merits. *See Trujillo*, 117 N.M. at 276, 871 P.2d at 372. Second, we find it significant that the tolling provisions of Rule 12–201(D) and Rule 12–201(E)(4) apply exclusively to post-trial motions filed under five sources of authority: (1) Section 39–1–1 (allowing the district court to retain jurisdiction for thirty days following entry of judgment "to pass upon and dispose of any motion . . . directed against such judgment"); (2) Rule 1–050(B) NMRA (renewed motion for judgment as a matter of law); (3) Rule 1–052(D) NMRA (motion to amend findings and conclusions); (4) Rule 1–059 NMRA (motion for new trial in a civil case); and (5) Rule 5–614 NMRA (motion for new trial in a criminal case). *See* Rules 12–201(D) and 12–201(E)(4). Conversely, New Mexico courts have held that certain other post-trial motions cannot serve to extend the time for filing a notice of appeal. *See, e.g., Martinez v. Friede*, 2004–NMSC–006, ¶ 17, 135 N.M. 171, 86 P.3d 596 (noting that a district court's power to re-open judgment and grant a new trial under Rule 1–060(B) has "no effect on the parties' ability to calculate the time in which they must file their notice of appeal . . . because a

motion under Rule 1–060(B) 'does not affect the finality of a judgment or suspend its operation' " (citation omitted)). The committee commentary to Rule 12–201 does not address why the tolling provisions of Rule 12–201(D) and Rule 12–201(E)(4) only apply to motions filed under the five sources of authority mentioned above. Neither has our research revealed any cases that clearly address the issue. However, in light of the fact that Rules 12–201(D) and 12–201(E)(4) enumerate an exclusive list of post-trial motions that toll the time for filing a notice of appeal, it does not require too great an imaginative leap to presume that the motions have something in common that justifies this tolling effect. Therefore, to understand whether the tolling provisions of Rules 12–201(D) and 12–201(E)(4) should apply to moving and non-moving parties alike, we look broadly at the policies underlying our system of appellate procedure and then examine how these post-trial motions relate to such policies.

{17} We begin with the general principle, known as the final judgment rule, that our appellate jurisdiction is limited to review of "any final judgment or decision, any interlocutory order or decision which practically disposes of the merits of the action, or any final order after entry of judgment which affects substantial rights[.]" NMSA 1978, § 39–3–2 (1966); *Principal Mut. Life Ins. Co. v. Straus*, 116 N.M. 412, 413, 863 P.2d 447, 448 (1993) ("The final judgment rule is embodied in [Section] 39–3–2[.]"). New Mexico courts generally consider a judgment final when "all issues of law and fact have been determined and the case disposed of by the trial court to the fullest extent possible." *Straus*, 116 N.M. at 413, 863 P.2d at 448 (internal quotation marks and citation omitted). The final judgment rule "serves a multitude of purposes, including the prevention of piecemeal appeals and the promotion of judicial economy." *Handmaker v. Henney*, 1999–NMSC–043, ¶ 7, 128 N.M. 328, 992 P.2d 879. These policies regarding finality are the key to understanding the impact of post-trial motions on the time for filing a notice of appeal. The critical question is: to what extent does a post-trial motion disturb the finality of the underlying judgment so that the time for filing a notice of appeal should be tolled?

{18} With that question in mind, we note that motions filed under any of the five sources of authority enumerated in Rules 12–201(D) and 12–201(E)(4) have the potential to affect the finality of the underlying judgment. For example, a motion to vacate the judgment filed pursuant to Section 39–1–1, as was filed in the present case, would, if granted, literally undo the judgment. Furthermore, Section 39–1–1 provides that a district court retains jurisdiction over final judgments for a limited time "to enable the court to pass upon and dispose of any motion ... *directed against such judgment,*" which suggests that such a motion seeks to alter the finality of the judgment. Section 39–1–1 (emphasis added); *see Trujillo v. Hilton of Santa Fe*, 115 N.M. 398, 402, 851 P.2d 1065, 1069 (Ct.App.) (holding that a workers' compensation claimant's post-trial motion for attorney's fees was not a motion directed against the judgment under Section 39–1–1 and thus did not extend time for filing notice of appeal under Rule 12–201(D)), *rev'd on other grounds,* 115 N.M. 397, 851 P.2d 1064 (1993).

{19} A renewed motion for judgment as a matter of law under Rule 1–050(B) also clearly threatens the underlying judgment. *See Valley Bank of Commerce v. Hilburn*, 2005–NMCA–004, ¶ 20, 136 N.M. 741, 105 P.3d 294 (holding that the time for filing a notice of appeal does not begin to run until the district court enters an order ruling on a post-trial motion for judgment as a matter of law). Likewise, a motion to amend findings and conclusions under Rule 1–052(D) could destroy the finality of the underlying judgment if the proposed amendments would alter the judgment in a material way. Finally, our Supreme Court has held that a timely motion for new trial under Rule 1–059 "suspends the finality of the judgment and tolls the running of the time for taking an appeal." *Rhein v. ADT Auto., Inc.,* 1996–NMSC–066, ¶ 12, 122 N.M. 646, 930 P.2d 783 (quoting 6A Jeremy C. Moore et al., *Moore's Federal Practice* ¶ 59.15[1] (2d ed.1985)). It follows that motions for new trial filed under Rule 5–614 in criminal cases would similarly threaten the finality of the underlying judgment. Thus, the potential impact of a post-trial motion on the finality of the underlying judgment justi-

fies tolling the time for filing a notice of appeal. However, our inquiry does not end there. We now return to the question of whether the tolling effect applies to all parties in the litigation.

**{20}** In addition to ensuring the finality of the judgment on appeal, applying the tolling provisions of Rules 12–201(D) and 12–201(E)(4) to all parties would help to prevent "the confusion and waste of time that might flow from putting the same issues before two courts at the same time." *Kelly Inn No. 102, Inc. v. Kapnison,* 113 N.M. 231, 241, 824 P.2d 1033, 1043 (1992) (internal quotation marks and citation omitted). Such is the purpose of the general rule divesting the district court of jurisdiction upon the filing of a notice of appeal. *Id.* The exception to this rule, however, is that "a pending appeal does *not* divest the trial court of jurisdiction to take further action when the action *will not affect the judgment on appeal* [.]" *Id.* at 241, 824 P.2d at 1043. As mentioned above, the post-trial motions enumerated in Rules 12–201(D) and 12–201(E)(4) have the potential to impact the finality of the underlying judgment, which would certainly affect the judgment on appeal. Therefore, applying the tolling provisions of Rules 12–201(D) and 12–201(E)(4) to all parties would ensure that appellate courts and district courts will not simultaneously take action affecting the merits of a final judgment.

**{21}** In the absence of specific authority to the contrary and in light of the above-mentioned policies, we conclude that one party's filing of a post-trial motion under one of the five authorities enumerated in Rules 12–201(D) and 12–201(E)(4) tolls the time in which all parties may file a notice of appeal, as well as the time in which the district court may grant an extension to any party to file a notice of appeal. Thus, the relevant time period commences upon the disposition of the motion by the court or by operation of law. Therefore, in the present case, GEC's motion to vacate the January 18, 2005, judgment pursuant to Section 39–1–1 suspended the finality of the judgment and tolled both the time in which the Subsidiaries could file a timely notice of appeal under Rule 12–201(D) as well as the time in which the district court could entertain the Subsidiaries' motion for an extension of time to file

a notice of appeal under Rule 12–201(E)(4). The district court denied GEC's motion to vacate on February 24, 2005. There is no dispute that, even with the benefit of the tolled period resulting from GEC's motion to vacate, the Subsidiaries missed the deadline to file a notice of appeal on Monday, March 28, 2005.

**{22}** Nevertheless, the district court retained jurisdiction to consider the Subsidiaries' request for an extension until April 25, 2005, sixty days following the date on which the district court denied GEC's motion, February 24, 2005. The Subsidiaries filed their motion for an extension on April 19, 2005, six days before the expiration of the sixty-day period. Thus, the district court had jurisdiction to entertain the Subsidiaries' request for an extension.

**{23}** We note that our holding today mirrors the federal policy of tolling the time for appeal for all parties upon the filing of certain post-trial motions. *See* Fed. R.App. P. 4(a)(4)(A). One commentator, addressing the tolling provisions of Rule 4(a)(4)(A), points out that

The obvious purpose of suspending the appeal period during the pendency of any of [the enumerated post-trial] motions is to give the district court an opportunity to correct errors before appeal. For this reason, suspension of the appeal period does not depend on who makes the post-judgment motion. The time for appeal "for all parties" is suspended pending disposition of such a motion[.]

David G. Knibb, *Federal Court of Appeals Manual* § 10.1, at 187 (4th ed.2000). This approach promotes judicial efficiency and meaningful appellate review; if the district court can correct errors in the judgment before any of the parties perfects an appeal, then there is a lessened likelihood that the case will make its way to the appellate courts in "piecemeal" fashion. *See State v. Peppers,* 110 N.M. 393, 397, 796 P.2d 614, 618 (Ct.App. 1990) (stating that action by the district court pursuant to a post-trial motion under Section 39–1–1 can render an appeal unnecessary, thus promoting efficiency).

**{24}** Having resolved the question of the district court's jurisdiction to grant the Sub-

sidiaries an extension of time to file a notice of appeal, we now turn to the question of whether the district court abused its discretion in denying the requested relief.

## 2. The District Court Did Not Abuse Its Discretion in Denying Appellants' Motion for an Extension of Time to File a Notice of Appeal

{25} We review a district court's denial of a motion for an extension of time to file a notice of appeal under an abuse of discretion standard. *Guess v. Gulf Ins. Co.,* 94 N.M. 139, 141, 607 P.2d 1157, 1159 (1980). Rule 12–201(E) sets forth the circumstances in which a district court may grant an extension of time to file a notice of appeal and reads, in relevant part:

(1) Before the time for filing a notice of appeal has expired, upon a showing of good cause, the district court may extend the time for filing the notice of appeal by any party for a period not to exceed thirty (30) days from the expiration of the time otherwise prescribed by this rule.

(2) After the time has expired for filing a notice of appeal, upon a showing of excusable neglect or circumstances beyond the control of the appellant, the district court may extend the time for filing a notice of appeal by any party for a period not to exceed thirty (30) days from the expiration of time otherwise provided by this rule, but it shall be made upon motion and notice to all parties.

*Id.* Therefore, depending on when the appellant files the motion for an extension, the district court must apply a different degree of scrutiny. If the appellant files the motion prior to the expiration of the thirty-day time limit for filing a notice of appeal, the district court may grant the extension on a showing of good cause. Rule 12–201(E)(1). In contrast, once the thirty-day deadline has passed, the appellant must demonstrate excusable neglect or circumstances beyond the appellant's control. Rule 12–201(E)(2); *see* Knibb, *Federal Court of Appeals Manual* § 12.3 ("Excusable neglect obviously means something more than good cause. Otherwise the standards ... for granting extensions before and after the appeal period's expiration would be the same."); *see also DeFillippo v. Neil,* 2002–NMCA–085, ¶ 27, 132 N.M.

529, 51 P.3d 1183 (stating that, under Rules 1–055(C) NMRA and 1–060(B), "the 'good cause' standard ... is broader and more liberal than the ... 'excusable neglect' standard").

{26} In the present case, the thirty-day deadline to file a notice of appeal passed before the Subsidiaries filed their motion for an extension. Therefore, the district court could only grant the motion upon a showing of excusable neglect or circumstances beyond the Subsidiaries' control. Rule 12–201(E)(2). The Subsidiaries allege that their failure to file a timely notice of appeal was due to excusable neglect. However, they do not claim that the failure was due to circumstances beyond their control. We therefore only address whether the Subsidiaries' inaction was due to excusable neglect and, if so, whether the district court abused its discretion in denying the Subsidiaries' motion.

{27} Whether an appellant's conduct amounts to excusable neglect will depend on the facts and circumstances of each case. *See Sunwest Bank v. Roderiguez,* 108 N.M. 211, 214, 770 P.2d 533, 536 (1989) (holding that, in ruling on motions to set aside judgment pursuant to Rule 1–060(B)(1), courts should analyze claims of excusable neglect based on the circumstances of each case); Knibb, *Federal Court of Appeals Manual* § 12.3, at 231 (stating that federal case law "illustrate[s] how much the concept of excusable neglect depends on the facts"). Although there are few New Mexico cases elaborating on the concept of excusable neglect, our Supreme court has prescribed a firm approach to claims of excusable neglect in the present context. *Compare Guess,* 94 N.M. at 142–43, 607 P.2d at 1160–61 (holding that former Rule 3(f), the predecessor to current Rule 12–201(E)(2), "should be strictly construed so as to prevent the progressive erosion of the rule to the point that attorneys will assume that they have sixty days within which to file notices of appeal") *with Roderiguez,* 108 N.M. at 213, 770 P.2d at 535 (noting that, in deciding motions to set aside default judgment under Rule 1–060(B)(1), trial courts should apply a liberal standard in determining the existence of excusable neglect). The *Guess* Court held that "[m]ere

failure to receive notice alone, work overload of attorneys, palpable error of counsel and other causes that do not rise to the level of 'unique' circumstances that cannot be anticipated or controlled by a party's counsel are not sufficient." 94 N.M. at 143, 607 P.2d at 1161. Likewise, in this Court we held that "[w]e will not extend the exception to late filing to circumstances ... where options available to the appellant to ensure timely filing of the notice [of appeal] were not taken." *Wilson v. Mass. Mut. Life Ins. Co.*, 2004–NMCA–051, ¶ 12, 135 N.M. 506, 90 P.3d 525. With this approach in mind, we now turn to the Subsidiaries' claim of excusable neglect.

{28} The Subsidiaries claim that their failure to file a timely notice of appeal was due to a "miscommunication" with trial counsel and that this miscommunication amounts to excusable neglect. However, claims of excusable neglect that attempt to disaggregate an appellant's conduct from that of its agent will generally fail. *See, e.g., Wilson*, 2004–NMCA–051, ¶¶ 11–12, 135 N.M. 506, 90 P.3d 525 (holding that appellant's reliance on a delivery service that failed to deliver appellant's notice of appeal on time did not constitute excusable neglect or circumstances beyond the appellant's control); *Adams v. Para–Chem S., Inc.*, 1998–NMCA–161, ¶ 9, 126 N.M. 189, 967 P.2d 864 (imputing to defendant the conduct of its insurer in failing to respond timely to a complaint); *Padilla v. Estate of Griego*, 113 N.M. 660, 665, 830 P.2d 1348, 1353 (Ct.App. 1992) (holding that a party is bound by the conduct of its attorney). Here it is important to remember the well-established maxim that an attorney's conduct binds his or her client. *Padilla*, 113 N.M. at 665, 830 P.2d at 1353. Absent compelling evidence of the client's efforts to "keep apprised of the course of the litigation," a reviewing court has no reason to consider a limitation on this general rule. *Id.; see also White v. Singleton*, 88 N.M. 262, 264, 539 P.2d 1024, 1026 (Ct.App.1975) (holding that trial court properly granted extension of time to file notice of appeal where appellants tried, but were unable, to reach their attorney before the deadline to file expired). We further held in *Adams* that, "to escape the consequences of his or her attorney's gross acts and failures,

the client must demonstrate personal diligence which was thwarted by the attorney." 1998–NMCA–161, ¶ 15, 126 N.M. 189, 967 P.2d 864. "A defendant cannot assert a justifiable belief that his interests were being protected, if he fails to inquire concerning possible problems of which he should have been aware under the circumstances." *Id.* ¶ 23 (internal quotation marks and citations omitted).

{29} In the present case, the Subsidiaries failed to monitor the progress of their appeal. The Subsidiaries claim that their failure to file a timely notice of appeal was due to a "miscommunication" with trial counsel, yet they offer no details explaining how the miscommunication took place, much less whether the miscommunication was "excusable." To the contrary, the overwhelming weight of the record points to the opposite conclusion.

{30} The record shows that the Subsidiaries had plenty of time and several opportunities to correct any miscommunication they had with their trial counsel. First, the Subsidiaries claim that their general counsel, who was also general counsel for GEC, communicated to trial counsel for all three entities that all three entities desired to challenge the January 18, 2005, judgment, both through post-trial motions and through the appellate process. Yet the Subsidiaries did not join in GEC's post-trial motion to vacate the judgment, which was filed on February 16, 2005. If this were the result of a miscommunication with trial counsel, the Subsidiaries' general counsel certainly became aware of the mistake when she attended the hearing on the motion and noticed that trial counsel was not representing the Subsidiaries in the hearing. However, the Subsidiaries never offered any details as to why this error went uncorrected.

{31} Second, even though GEC filed a notice of appeal on February 18, 2005, the Subsidiaries never filed their own notice of appeal. The Subsidiaries' general counsel admitted in her affidavit that she received a copy of GEC's notice of appeal, but not until "after the date it was filed." Thus, so the story goes, the general counsel did not become aware of the Subsidiaries' omission from the notice of appeal until "early March."

Assuming that "early March" means sometime within the first half of March, nothing prevented the Subsidiaries from filing their notice of appeal by March 28, 2005—the extended deadline that resulted from GEC's filing of its post-trial motion—or from requesting an extension of time under Rule 12–201(E). Instead, the Subsidiaries waited until April 19, 2005, to file their motion for an extension, which was at least a month following their discovery of GEC's notice of appeal in "early March."

{32} The Subsidiaries attribute this delay to the time required to retain a new firm to handle their motion for an extension and to bring that firm up to speed on the facts and circumstances of the underlying case. This argument is unpersuasive. While it is true that a substitution of counsel may incur some delay, the Subsidiaries could have directed their outgoing counsel to file the motion for an extension under the good cause standard of Rule 12–201(E)(1) before the deadline to file a notice of appeal expired on March 28, 2005. Furthermore, we are not willing to hold, as a matter of law, that a substitution of counsel will excuse a party from filing for an extension of time for a period of over a month. Given their early notice regarding their omission from GEC's post-trial motions, the Subsidiaries failed to act diligently to ensure that their trial attorneys were properly representing their interests.

{33} In light of the foregoing discussion, the district court did not abuse its discretion in denying the Subsidiaries' motion for an extension of time to file a notice of appeal. The Subsidiaries had well over a month, from the filing of GEC's post-trial motion on February 16, 2005, to the March 28, 2005, deadline for all parties to file a notice of appeal, to discover that their trial attorneys were not acting on their behalf as instructed. It is difficult to understand how the Subsidiaries' general counsel, who was also the general counsel for GEC, as the manager of legal affairs for all three entities, could have failed to discover and correct any miscommunication early on. Furthermore, the Subsidiaries failed to provide the district court with any details regarding the alleged "miscommunication" with trial counsel, and they are unable to point this court to anything in the record suggesting that their neglect in failing to file a timely notice of appeal was excusable. Finally, in denying the motion from the bench, the district court noted the Subsidiaries' "complete indifference" to the judicial process throughout the litigation.

{34} These facts do not present a compelling case to support a finding of excusable neglect. To the contrary, the Subsidiaries conduct represents precisely the kind of delay and waste of judicial resources against which our Rules of Appellate Procedure are designed to protect. Holding otherwise would greatly undermine our Supreme Court's directive that Rule 12–201(E)(2) be "strictly construed so as to prevent the progressive erosion of the rule." *Guess,* 94 N.M. at 142–43, 607 P.2d at 1160–61.

{35} In sum, although the district court had jurisdiction to hear the Subsidiaries' motion for an extension of time to file a notice of appeal, the district court did not abuse its discretion in denying the motion. We therefore dismiss the remainder of Subsidiaries' appeal as untimely and remand to the district court for proceedings consistent with this opinion.

{36} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and RODERICK T. KENNEDY, Judges.