# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>July 21, 2016</u>

**NO. 33,370**

**HENRY P. MARQUEZ,**

     **Plaintiff-Appellee,**

**v.**

**FRANK LARRABEE and
LARRABEE, INC., a New Mexico
Corporation, G&D CONSTRUCTION, INC.,
a New Mexico Corporation, and
MELVILLE HEDGES, and JUANITA
GAIL HEDGES, husband and wife,
GALEN LARRABEE,**

     **Defendants-Appellants.**

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY
George P. Eichwald, District Judge**

Barnett Law Firm
David A. Garcia
Albuquerque, NM

for Appellee

Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Amanda Lavin
Albuquerque, NM

for Appellants

# OPINION

**HANISEE, Judge.**

{1}    Defendants-Appellants G & D Construction, Inc., Melville Hedges, Juanita Gail Hedges, Frank Larrabee and Larrabee Inc. appeal from the district court's denial of their motion to set aside a default judgment under Rule 1-060(B)(6) NMRA. The district court entered the default judgment as a sanction pursuant to Rule 1-037(B)(2)(c) NMRA and awarded Plaintiff compensatory and punitive damages as well as attorney fees and costs. Although the conduct of Defendants' attorney may have warranted the district court's sanction, we hold that the district court abused its discretion in denying Defendant's motion to set aside the default judgment without making findings of fact as to Defendants' own diligence in pursuing their defenses and awareness of their attorney's conduct. We therefore vacate the district court's default judgment and remand this case for further proceedings.

**BACKGROUND**

{2}    Plaintiff's lawsuit alleges that Defendants sold a house to Plaintiff that suffered from numerous construction defects in violation of various warranties that Defendants had made to Plaintiff in the purchase agreement and other documents. Shortly after discovery began, it became apparent that Defendants' attorney, Peter Everett IV, was incapable of discharging his responsibilities as Defendants' representative and an

officer of the court.

{3} From September 2012 and throughout the duration of the underlying litigation, Mr. Everett underwent several major surgeries and was under the influence of narcotic pain killers at the direction of his physician. Mr. Everett also explained that he represented Defendants Gail and Melville Hedges (the Hedges) during the negotiations with Plaintiff for the purchase of the home that became the subject of the litigation. As Mr. Everett acknowledged, this rendered him a fact witness, prohibiting him from representing any of the parties named as Defendants in Plaintiff's lawsuit. The record thus reflects Mr. Everett's own concern that his status as a fact witness and his use of narcotic pain killers undermined his ability to adequately discharge his duties as an advocate on all of his clients' behalf.

{4} Despite his concerns, however, Mr. Everett did not withdraw from representing Defendants or seek to obtain substitute counsel. Mr. Everett went on to file numerous frivolous motions and other pleadings, refused to participate in discovery, and failed to appear for scheduled hearings on important pretrial motions and discovery matters. Mr. Everett also verbally abused and threatened Plaintiff's attorney in open court, attacked the integrity of the district court, and otherwise acted in a matter unbecoming of a licensed attorney, who is an officer of the court as well as his clients' advocate. *See In re Chavez*, 2013-NMSC-008, ¶ 26, 299 P.3d 403.

2

{5}   The district court's decision to enter a default judgment against Defendants was ultimately occasioned by Plaintiff's inability to obtain discovery. Repeatedly, Defendants had failed to appear for depositions and failed to produce documents requested by Plaintiff. This gave rise to several motions to compel, which the district court granted.[1] Still, Defendants failed to appear at depositions or produce documents that the district court ordered, and eventually Plaintiff moved the district court to enter a default judgment against Defendants for failing to comply with an order compelling discovery. *See* Rule 1-037(B)(2)(c) ("If a party . . . fails to obey an order to provide or permit discovery, . . . the court in which the action is pending may make . . . an order . . . rendering a judgment by default against the disobedient party[.]"). The district court scheduled a hearing on the motion, notice of which was sent both to Mr. Everett and Defendants personally. Neither Defendants nor Mr. Everett appeared at the hearing, and the district court granted Plaintiff's motion for a default judgment. The court scheduled another hearing on the amount of damages that Plaintiff ought to be awarded, notice of which was again served on both Mr. Everett and Defendants personally. Neither Defendants nor Mr. Everett appeared at the damages hearing. On May 30, 2013, the district court entered a default judgment

---

[1]The record is unclear as to whether Defendants were ever personally served with the subpoenas or the district court's order granting Plaintiff's motions to compel.

3

against Defendants in Plaintiff's favor and awarded Plaintiff $648,124.27 in compensatory damages, unpaid court sanctions in the amount of $3,150, attorney fees of $48,255.87, and punitive damages in the amount of $300,000 for "willfully and intentionally thwarting every effort by the Plaintiff in its discovery process."

{6}     On June 7, 2013, Defendants filed a motion to set aside the default judgment. The district court held a hearing on the motion on September 20, 2013. At the hearing, Mr. Everett explained that he was in intensive care when the district court heard arguments on Plaintiff's motion for a default judgment. Mr. Everett also appeared to dispute Plaintiff's claim that he had not participated in discovery, saying that Defendants had "responded to every bit of discovery[,]" but that "Mr. Larrabee had no other documents to give." The district court did not accept Mr. Everett's explanation, and refused to set aside its default judgment against Defendants. Defendants now appeal the district court's denial of their motion to set aside the default judgment.

**DISCUSSION**

{7}     Defendants raise four issues on appeal: (1) whether a default judgment was an appropriate sanction under Rule 1-037; (2) whether the district court abused its discretion in refusing to grant Defendants' motion to set aside the default judgment under Rule 1-060(B)(6); (3) whether Rule 1-037 permits the assessment of punitive

4

damages as a sanction for discovery violations; and (4) whether the district court abused its discretion in awarding Plaintiff attorney fees and costs as a sanction under Rule 1-037.

{8} As an initial matter, we note that Rule 12-201(A)(2) NMRA requires a party to file a notice of appeal in the district court "within thirty (30) days after the judgment or order appealed from." But the filing of a motion to set aside a judgment under Rule 1-060 does not toll the period of time for filing a notice of appeal. *See* Rule 1-060(B)(6); *see also Capco Acquisub, Inc. v. Greka Energy Corp.*, 2007-NMCA-011, ¶ 14, 140 N.M. 920, 149 P.3d 1017 (noting that motions under Rule 1-060(B)(6) do not fall within the enumerated exceptions in Rule 12-201(D) and (E)(4) to Rule 12-201(A)(2)'s thirty day deadline for filing a notice of appeal).[2]

{9} In this case, Defendants filed a notice of appeal on November 8, 2013, nearly five months after the district court entered its default judgment. Thus, Defendants' notice of appeal was timely only as to the district court's denial of their motion to set aside the default judgment under Rule 1-060, not the district court's order granting

---

[2]We note that under the current version of Rule 12-201(D), a motion under Rule 1-060(B) filed within 30 days of a judgment extends the time for filing a notice of appeal until the motion is withdrawn or denied. Given the amendments to Rule 12-201(D), it appears that *Capco Acquisub, Inc.* is no longer a correct statement of the law. However, because the judgment in this case and the district court's denial of Defendants' Rule 1-060(B) motion occurred before current Rule 12-201(D) came into effect, the rule in *Capco Acquisub, Inc.* applies.

5

Plaintiff's motion for a default judgment. Because the first, third, and fourth issues raised by Defendants relate to the merits of Plaintiff's motion for a default judgment as a sanction for discovery violations under Rule 1-037, we conclude that Defendants failed to timely appeal those issues. Accordingly, we address only the question of whether the district court correctly denied Defendants' motion under Rule 1-060.

{10}     We now turn to the merits of Defendants' contention that the district court erred in denying their motion to set aside the default judgment. Rule 1-060(B) provides that a district court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

>           (1)     mistake, inadvertence, surprise, or excusable neglect;

>           (2)     newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 1-059 NMRA;

>           (3)     fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

>           (4)     the judgment is void;

>           (5)     the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

>           (6)     any other reason justifying relief from the operation of the judgment.

Rule 1-060(B)(6) further provides that a motion to set aside a judgment under Rule

1-060 "shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one (1) year after the judgment, order, or proceeding was entered or taken." Our Supreme Court has interpreted Rule 1-060(B)(6) to require "[the] party seeking to set aside a default judgment under Rule 1-060(B)(6) [to] show the existence of *exceptional* circumstances and reasons for relief other than those set out in Rules 1-060(B)(1) through (5)." *Rodriguez v. Conant*, 1987-NMSC-040, ¶ 22, 105 N.M. 746, 737 P.2d 527 (emphasis added). We review the district court's decision to grant or deny a motion under Rule 1-060(B)(6) for an abuse of discretion. *Rodriguez*, 1987-NMSC-040, ¶ 18.

{11} Defendants contend that Mr. Everett's gross negligence as their attorney is an exceptional circumstance that entitles them to relief from the default judgment entered against them as a result of his misconduct. Generally, "mere attorney negligence [does] not constitute exceptional circumstances for purposes of applying [Rule] 1-060(B)(6), and a claimant's proper recourse would be to bring a malpractice suit against the negligent attorney." *Resolution Tr. Corp. v. Ferri*, 1995-NMSC-055, ¶ 17, 120 N.M. 320, 902 P.2d 738 (citing *Inryco, Inc. v. Metro. Eng'g Co.*, 708 F.2d 1225, 1235 (7th Cir. 1983)). "However, when an attorney's failure rises to the level of *gross negligence*, the trial court may find exceptional circumstances warranting reopening a default judgment under [Rule] 1-060(B)(6)." *Ferri*, 1995-NMSC-055,

7

¶ 18 (citing *Jackson v. Washington Monthly Co.*, 569 F.2d 119, 122 (D.C. Cir. 1977); *L.P. Steuart, Inc. v. Matthews*, 329 F.2d 234, 235 (D.C. Cir. 1964)).

{12}    "The New Mexico Rules of Civil Procedure are modeled after the Federal Rules of Civil Procedure, and the substance of Rule 1-060(B) is virtually identical to its federal counterpart, Federal Rule of Civil Procedure 60(b)." *Kinder Morgan CO₂ Co. v. N.M. Taxation & Revenue Dep't*, 2009-NMCA-019, ¶ 11, 145 N.M. 579, 203 P.3d 110. "Because our rule closely tracks this language, the federal construction of Rule 60(b) is persuasive authority for the construction of Rule 1-060(B)." *Kinder Morgan CO₂ Co.*, 2009-NMCA-019, ¶ 11. In the following paragraphs, we analyze federal circuit courts of appeal's differing approaches to the question of whether an attorney's gross negligence justifies reopening a judgment under Federal Rule 60(b)(6) in order to provide a helpful grounding to our application of New Mexico's rule to this case.

{13}    The minority approach, adopted by the Seventh and Eighth Circuit Courts of Appeal, is that gross attorney negligence never constitutes an "exceptional circumstance" justifying reopening of a judgment under Federal Rule 60(b)(6). *See United States v. 8136 S. Dobson St., Chicago, Ill.*, 125 F.3d 1076, 1083 (7th Cir. 1997); *accord Heim v. Comm'r of Internal Revenue Serv.*, 872 F.2d 245, 248 (8th Cir. 1989). The minority approach is based on three rationales: first, "[h]olding the client

8

responsible for the lawyer's deeds ensures that both clients and lawyers take care to comply. If the lawyer's neglect protected the client from ill consequences, neglect would become all too common. It would be a free good—the neglect would protect the client, and because the client could not suffer the lawyer would not suffer either." *8136 S. Dobson St.*, 125 F.3d at 1084. Second, preventing a party from obtaining relief from a judgment entered as a result of his attorney's gross negligence does not leave the party without a remedy: the party may seek recourse for the damages caused by the execution of the judgment in a malpractice action. *Id.* Finally, the acts of an attorney on behalf of his client are imputed to the client under common law principles of agency. *See Ferri*, 1995-NMSC-055, ¶ 17 (stating that "all parties are deemed bound by the acts and failures of their lawyers. Indeed, to set aside the default merely because the defendant should not be penalized for the omissions of the attorney would be visiting the sins of the defendant's lawyer upon the plaintiff." (alterations, internal quotation marks, and citations omitted)). Under this rationale, it would seem incongruous to hold a client responsible for the ordinary negligence of his attorney as well as his attorney's willful misconduct, but not for conduct that falls between these two extremes. *See United States v. 7108 W. Grand Ave., Chicago, Ill.*, 15 F.3d 632, 634 (7th Cir. 1994) (stating in the context of attorney error that liability for both negligence and intentional misconduct is inclusive of an attorney's gross negligence).

{14}     A majority of federal circuit courts of appeal have held that a showing of gross negligence by an attorney is an exceptional circumstance sufficient to set aside a default judgment. *See Carter v. Albert Einstein Med. Ctr.*, 804 F.2d 805, 806 (3d Cir. 1986); *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 195 (6th Cir. 1986); *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1170 (9th Cir. 2002); *L.P. Steuart, Inc.*, 329 F.2d at 235; *Primbs v. United States*, 4 Cl. Ct. 366, 370 (1984). There are two apparent rationales for this rule: (1) Federal Rule 60 is remedial, and judgment by default "is an extreme measure and a case should, whenever possible, be decided on the merits[;]" and (2) "[w]hen an attorney is grossly negligent, . . . the judicial system loses credibility as well as the appearance of fairness, if the result [was] that an innocent party is forced to suffer drastic consequences." *Cmty. Dental Servs.*, 282 F.3d at 1170 (internal quotation marks and citation omitted).

{15}     Our Supreme Court's decision in *Ferri* falls somewhere between these two approaches. On the one hand, *Ferri* recognizes the "general rule of attorney-as-agent" principle underlying the Seventh and Eighth Circuits' approach. 1995-NMSC-055, ¶¶ 17, 19. But on the other hand, *Ferri* acknowledges "the harsh result of penalizing diligent clients who were affirmatively misled by their attorneys into unintentionally allowing their legitimate claims or defenses to be lost." *Id.* ¶ 19. Our Supreme Court has modified *Ferri*'s rule by requiring a party seeking to reopen a judgment based on

10

allegations of gross attorney negligence or misconduct to make two additional showings: (1) that "the moving party had a legitimate claim or defense" and (2) "there is little, if any, likelihood of prejudice to the non-moving party should there be a vacation of the judgment[.]" *Meiboom v. Watson*, 2000-NMSC-004, ¶ 32, 128 N.M. 536, 994 P.2d 1154 (citation omitted).[3] These two factors appear to be equity-driven, requiring the district court to weigh one party's loss of a legitimate claim or defense against the prejudice that reopening the judgment would visit on the judgment creditor. *See Jackson v. Wash. Monthly Co.*, 569 F.2d 119, 122 n.19 (D.C. Cir. 1977) ("[I]f [the] appellant is correct in his claims that [the] appellees contributed to the delay in effectuating the purported settlement, and that for almost a year they allowed him to believe that his suit was in good standing although they knew that it was not, [the appellant] could not fairly be charged with any prejudice that [the] appellees

---

[3]*Meiboom* cites *Ferri*, requiring a moving party seeking to reopen a judgment under Rule 1-060(B)(6) on grounds of gross attorney negligence to show that "the moving party had a legitimate claim or defense[,]" *Meiboom*, 2000-NMSC-004, ¶ 32, but the cited portion of *Ferri* concluded that a judgment based on a mistake of law could only be reopened under Rule 1-060(B)(1), which provides for setting aside a judgment based on a "mistake." *See Ferri*, 1995-NMSC-055, ¶¶ 8-9. It is hard to square *Meiboom*'s citation of *Ferri* as requiring a showing that a party has a meritorious claim or defense in order to reopen a judgment under Rule 1-060(B)(6) with the well-established rule that the grounds for reopening a judgment under Rule 1-060(B)(1) and Rule 1-060(B)(6) are mutually exclusive. *See Ferri*, 1995-NMSC-055, ¶ 10 (stating that "we have long held that [Rule] 1-060(B)(6) provides relief only for reasons *other* than those enumerated in [Rule] 1-060(B)(1) through (5)").

11

might have suffered"), *cited in Ferri*, 1995-NMSC-055, ¶ 18.

{16} *Ferri* and *Meiboom* give district courts latitude when asked to reopen a default judgment based on allegations of gross attorney negligence. This approach acknowledges that application of Rule 1-060(B)(6) in this context entails application of equitable considerations that led our Supreme Court to adopt Rule 1-060(B)(6) in the first place. *See Meiboom*, 2000-NMSC-004, ¶ 31 ("Rule 60([B])(6) provides a reservoir of equitable power to do justice in a given case[.]" (quoting *Battersby v. Bell Aircraft Corp.*, 1958-NMSC-135, ¶ 7, 65 N.M. 114, 332 P.2d 1028)). But this approach requires courts to make a somewhat probing inquiry into the defaulting party's own diligence in pursuing a claim or preparing a defense.

{17} *Ferri* itself demonstrates the importance of creating a record in order to allow meaningful appellate review of a district court's decision to grant or deny a motion to reopen a judgment under Rule 1-060(B)(6) for gross attorney negligence; in that case, the Court reversed the district court's denial of the appellants' Rule 1-060(B)(6) motion without inquiring into whether the record supported the district court's ultimate decision based on the district court's failure to make findings of fact as to the defaulting party's diligence in pursuing her defenses. *Ferri*, 1995-NMSC-055, ¶ 20. The Court remanded the case to the district court to conduct an evidentiary hearing into these issues. *Id.* ¶ 20. The Court also stated that the district court could properly

consider evidence that the appellant herself had been given notice of various important procedural developments in evaluating her diligence. *Id.*

{18}   We conclude that this appeal requires a similar outcome. Although the record supports a finding of gross attorney negligence, there is little if any evidence of Defendants' personal acquiescence in their attorney's conduct. In neither its oral decision to grant Plaintiff's motion for a default judgment nor its written default judgment does the district court make any findings of fact as to whether Defendants were aware of their attorney's gross negligence. This alone requires us to reverse the district court and remand for an evidentiary hearing for inquiry into Defendants' complicity, if any, in their attorney's intransigence and obstruction of the discovery process. *See id.* (reversing the district court for failing to make a finding of fact as to the defaulting party's diligence in pursuing her defense and remanding for an evidentiary hearing on that issue).[4] As well, our own review of the record produces

---

[4]*Ferri* sets out the following list of non-exclusive facts that are relevant in evaluating the defaulting party's diligence: whether the party seeking to reopen the judgment "actively and repeatedly attempted to communicate with her attorney; [whether] her attorney misrepresented the status or nature of the case; [whether] she relied on her attorney's representations in good faith; and [whether] a reasonably prudent person involved in such litigation similarly would have relied on those representations and would not have made further inquiries or efforts to advance his or her position." *Id.*, ¶ 20. The district court should consider these and other factors it deems relevant in determining Defendants' diligence in pursuing their case upon remand.

13

inconsistency regarding the provision of notice to Defendants themselves and their awareness of Mr. Everett's conduct.

{19} On remand, Defendants bear the burden of proving that they were diligent in pursuing their claims and that Mr. Everett affirmatively caused their default. *See id.* ¶ 19 ("On remand, [the appellant] has the burden of demonstrating her diligence in pursuing her case."). We recognize that this inquiry is all the more difficult in cases like this one where the attorney who brought about his client's default continues to represent the client past the entry of the default judgment. However, on appeal Defendants have obtained substitute counsel; after remand, the district court can properly consider any continued failure by the Defendants to participate in this litigation in determining whether Defendants should be charged personally with their previous attorney's egregious conduct, and also make its own evaluation in the first instance about the merits of Defendants' defenses.

{20} The district court also failed to make a necessary inquiry into the prejudice that Plaintiff would suffer if the default judgment were reopened. For example, Defendants have asserted that Defendants Melville and Juanita Hedges filed for bankruptcy after entry of the district court's default judgment. On remand, the district court should inquire into whether this or other developments subsequent to the district court's entry of default have increased or decreased the prejudice that Plaintiff would

14

suffer if the judgment were reopened. The district court should also consider the extent to which Plaintiff's own conduct brought about Defendants' default (the district court suggested to counsel for Plaintiff that he move to disqualify Mr. Everett from representing Defendants; whether Plaintiff's decision not to file such a motion contributed to Defendants' failure to participate in the litigation is thus also a valid avenue of inquiry).

{21}     The district court's denial of Plaintiff's motion to set aside its default judgment is reversed and this case is remanded for further proceedings.

{22}     **IT IS SO ORDERED.**


_____
**J. MILES HANISEE, Judge**


**WE CONCUR:**


_____
**MICHAEL E. VIGIL, Chief Judge**


_____
**JAMES J. WECHSLER, Judge**

15